UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YOEL WEISSHAUS,<br><br>         *Plaintiff,*<br><br> - against -<br><br>Hon. ANDREW CUOMO in his official and individual capacity,<br><br>         *Defendant.* | **Case: 1:20-cv-05826-BMC** |

**MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION**

  Eugene Lynch for the Law Offices of Eugene Lynch, on behalf of Yoel Weisshaus ("Plaintiff") moves the Court for a preliminary injunction against the Hon. ANDREW CUOMO in his official and individual capacity ("Defendant"):

  1.  This case comes down to the elements that (1) the federal government has exclusive jurisdiction to regulate entry into the United States (see *Henderson v. Mayor of City of New York*, 92 U.S. 259, 271 (1875)), (2) Congress designated the Customs and Border Protection ("Customs") for screening those landing at an airport and determining admissibility (6 U.S.C. § 211 et seq.), (3) Once Customs grants Plaintiff admission, Plaintiff has a Constitutional right to enter the United States without being screened or denied entry by a State (U.S. Const. amend. XIV s. 1), (4) Defendant deprived the Plaintiff at JFK Airport the right to entry into the United States unless a New York State Traveler Health Form was completed (ECF 1), (5) Defendant does not have any authority to impose any conditions improvising or mimicking the jurisdiction of Customs (see *Henderson* at id), and (6) Defendant's action must be preempted and enjoined under the Supremacy Clause of the United States Constitution (*Arizona v. United States*, 567 U.S. 387, 397 (2012)).

**GENERAL FACTS**

2.      JFK Airport is a port of entry into the United States, within the meaning of 6 U.S.C.A. § 211(g)(3), which provides Customs to screen all persons arriving in the United States.

3.      On November 18, 2020, Plaintiff a natural citizen of the United States, returned to JFK Airport from a trip overseas. Customs granted Plaintiff entry and provided Plaintiff with an advisory in reference to COVID-19 issued by the Centers for Disease Control and Prevention ("CDC"). Attached to the verified complaint as **Exhibit A** is a true copy of the CDC advisory (ECF 2-1). Afterwards, Customs directed Plaintiff to the exit the proximity of the closed screening area, so Plaintiff may go about his own way.

4.      Defendant, as the Governor of the State of New York, subjected Plaintiff to another level of screening in order to make entry by demanding that Plaintiff complete an involuntary New York State Traveler Health Form. Attached to the complaint as **Exhibit B** is a true copy of the form Defendant imposed on Plaintiff (ECF 2-2). Plaintiff objected to Defendant's agent, stating that his destination is outside the State of New York. Over Plaintiff's objection, at Defendant's command, Plaintiff was denied the right of entry without completing New York State Traveler Health Form, "you cannot leave until you complete this form".

5.      The basis for the New York State Traveler Health Form arises from an edict issued by Defendant as an Executive Order 205.2, captioned as Quarantine Restrictions on Travelers Arriving In New York. Attached as **Exhibit C** is a true copy of the executive order, stating "travelers must continue to fill out the traveler form upon entry" and noncompliance is subject to a $10,000 fine (Executive Order") (ECF 2-3). The form compels the disclosure of personal information under the penalty of perjury.

6.      On December 1, 2020, Plaintiff filed this action to enjoin Defendant.

**GROUNDS FOR A PRELIMINARY INJUNCTION**

7. A motion for an injunction must establish likelihood to succeed on the merits, likelihood to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in movant's favor, and that an injunction is in the public interest. *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 58 (2d Cir. 2020). Where the government is a party to the suit, two factors that a plaintiff seeking a preliminary injunction must establish—that the balance of equities tips in his favor, and that an injunction is in the public interest—merge. *Id.*

<u>Standing</u>

8. Defendant subjected Plaintiff to his Executive Order. The Defendant is likely to continue his Executive Order when Plaintiff returns on January 13, 2021 from overseas, as the Executive Order has no expiration date.

9. The Fourteenth Amendment provides, "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." Thus, Plaintiff has a right not to be screened by a State official when entering the United States. See *Henderson v. Mayor of City of New York*, 92 U.S. 259, 271, 23 L. Ed. 543 (1875), *Saenz v. Roe*, 526 U.S. 489, 501 (1999).

10. While the privileges and immunities for the right to travel interstate and the liberty of the right to travel internationally are distinguished. *Abdi v. Wray*, 942 F.3d 1019, 1029 (10th Cir. 2019). Once Customs grants Plaintiff right of entry and to exit the screening zone of Customs, the protection of the privileges and immunities clause apply, and Plaintiff cannot be deprived by a State of the very right of entry he was just granted by Customs.

11. Thus, Plaintiff has standing.

Success on the Merits

12. On the merits, Plaintiff has the likelihood of success on the premise that a State government cannot condition Plaintiff's entry into the United States, since it is an area of jurisdiction exclusively occupied by Congress.

13. The right to entry into the United States is exclusively occupied by Congress, who designated Customs to screen all persons arriving at any international airport. The governing law is clear, a State cannot exercise police powers to screen "against contagious and infectious diseases" at a port of entry and "no urgency for its use, can authorize a State to exercise it in regard to a subject-matter which has been confided exclusively to the discretion of Congress by the Constitution." *Henderson v. Mayor of City of New York*, 92 U.S. 259, 271 (1875).

14. This principle has been echoed in *Arizona v. United States*, 567 U.S. 387, 397, 132 S. Ct. 2492, 2499, 183 L. Ed. 2d 351 (2012) (The "United States Customs and Border Protection (CBP) is responsible for determining the admissibility of aliens and securing the country's borders") and *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985).

15. It is the duty of the Commissioner of Customs to "develop and implement screening and targeting capabilities, including the screening, reviewing, identifying, and prioritizing of passengers and cargo across all international modes of transportation, both inbound and outbound." 6 U.S.C.A. § 211(c)(9). Together with the National Targeting Center, they "(i) serve as the primary forum for targeting operations within U.S. Customs and Border Protection to collect and analyze traveler and cargo information in advance of arrival in the United States to identify and address security risks and strengthen trade enforcement; (ii) identify, review, and target travelers and cargo for examination; (iii) coordinate the examination of entry and exit of travelers." 6 U.S.C.A. § 211(g)(4)(C). The responsibility for screening persons at any port of entry rests with the federal government, primarily with Customs, and one of its main responsibilities is

to "detect, respond to … persons who may undermine the security of the United States." 6 U.S.C. § 211(c)(5). See *Hernandez v. Mesa*, 140 S. Ct. 735, 746, 206 L. Ed. 2d 29 (2020).

16. Based on the foregoing, Congress exclusively occupies the jurisdiction of screening entry into the United States, and "Where Congress occupies an entire field, as it has in the field of alien registration, even complementary state regulation is impermissible. Field preemption reflects a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards." *Arizona v. United States*, 567 U.S. 387, 401 (2012).

17. Moreover, Defendant is without any authority whatsoever to screen or deny entry to anyone at a port of entry by way of mandating practices like the completion of the New York State Traveler Health Form. Yet, Defendant has guards at the international airports standing at the exit door of Customs and preventing arriving citizens from exiting the airport - unless the New York State Traveler Health Form is completed. Without completing the form, the citizen is denied entry, despite Customs having just granted entry to that citizen.

18. Even to the extent that the Executive Order is "complementary" to federal law, the Executive Order trespasses into a field occupied by the jurisdiction of Customs and thus is preempted as held in *Arizona v. United States*, 567 U.S. 387, 401 (2012).

### Irreparable Harm

19. On evening of January 13, 2021, Plaintiff is scheduled to return from overseas. Defendant, unless enjoined, is expected to condition Plaintiff's entry into the United States upon completion of the Traveler Health Form. The irreparable harm is, as the Second Circuit held, "the alleged violation of a constitutional right triggers a finding of irreparable injury." *Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004). "the continued

deprivation of his freedom from detention without due process constitutes irreparable harm." *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *5 (S.D.N.Y. May 23, 2018).

20. Furthermore, the Fourteenth Amendment affords the Constitutional right to entry upon clearance by Customs. Defendant is flexing unconstitutional police powers by taking away or diminishing Plaintiff's right to enter the United States. Besides, there is no method of repairing a harm that goes to National security.

21. Defendant's screening of all persons arriving from overseas is a condition imposed by the dictate of a lone governor, without any authority of the law. "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). This irreparably harms Plaintiff from being free from unreasonable screenings, by detaining Plaintiff and not releasing him without completing the New York State Traveler Health Form.

22. Moreover, where the "violation carries noncompensable damages, a finding of irreparable harm is warranted." Columbia *Cty. Corr. Officer's Benevolent Ass'n, Local 3828, New York State Law Enf't Officers Union, Dist. Council 82, AFSCME, AFL-CIO v. Murell*, No. 120CV00684BKSCFH, 2020 WL 5074194, at *9 (N.D.N.Y. Aug. 27, 2020). The type of Constitutional *violation* alleged in this case is not compensable with an award of money damages, and thus a continuation of the Defendant's arbitrary action compounds the irreparable harm. Moreover, this is the type of Constitutional *injury* that leaves no method for the Court to undo the injury.

<u>The Equities Tip in Plaintiff's Favor and is in The Public's Interest</u>

23. The equities and public interest are as the Supreme Court held, "Federalism, central to the constitutional design, adopts the principle that both the National and State

Governments have elements of sovereignty the other is bound to respect." *Arizona v. United States*, 567 U.S. 387, 398, 132 S. Ct. 2492, 2500, 183 L. Ed. 2d 351 (2012). The interest the federal government has in protecting the border must remain free and clear from State officials abridging that interest. Federal law makes a single sovereign responsible for maintaining a comprehensive and unified system to keep track of aliens within the Nation's borders. *Id* at 401–02. Otherwise, every State could give itself independent authority to prosecute federal registration violations, diminishing the Federal Government's control over entry and detracting from the integrated scheme of regulation created by Congress. *Id* at 402. Even if a State may make violation of federal law a crime in some instances, it cannot do so in a field (like the field of alien registration) that has been occupied by federal law. *Id*. "[T]here is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *New York v. Trump*, No. 20CV5770RCWPWHJMF, 2020 WL 5796815, at *6 (S.D.N.Y. Sept. 29, 2020).

    24. Here, the equities are in Plaintiff's favor because of the public interest involved. At international airports in the United States, Customs works honorably and exclusively to protect the nation, and Defendant has no authority to come along and use an Executive Order to trump the authority of Customs declaring that he will do a better job to protect the nation from Covid-19, by screening and threatening all passengers arriving at the airport; the implication is that the work of Customs is not good enough for the safety of the nation. This type of treatment tips in favor of enjoining Defendant from usurping the authority to declare the work of the federal government as inadequate. The public interest is that Defendant has no authority to exercise the

unlawful action of denying entry into the United States to citizens who have already been cleared by Customs.

25. It is in the public interest to enjoin Defendant who is acting under the color of law from interfering with the federal law practiced by the Customs and from imposing its own dictates of scrutiny for admission into the United States. Public interest weighs in favor of granting Plaintiff's motion for a preliminary injunction, declaring that Plaintiff has the right to be free from Defendant's erroneous screening, and entering a judgment in favor of Plaintiff.

## **CONCLUSION**

26. Wherefore, Plaintiff requests the entry of judgment (1) holding that the Executive Order is preempted by Federal law, (2) enjoining Defendant from imposing any screening conditions supplementary or complimentary to those practiced by the Customs and Border Protection, (3) enjoining Defendant from using any information obtained from the New York State Traveler Health Form, (4) awarding attorney and legal fees associated with bringing this action, and (5) as well such other and further relief as the Court deems as just and reasonable.

Dated: Brooklyn, NY
December 23, 2020

Respectfully submitted,

Law Office of Eugene M. Lynch

By: Eugene M. Lynch

488 Empire Blvd, Suite 101
Brooklyn, NY 11225

Tel: (212) 354-5555