UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

YOEL WEISSHAUS,

Plaintiff,

- against -

ANDREW M. CUOMO, in his official and
Individual capacities,

Defendant.

20-CV-05826 (BMC)(KNF)

**GOVERNOR ANDREW M. CUOMO'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant*
*Andrew M. Cuomo*
28 Liberty Street
New York, NY 10005
Tel: (212) 416-8661

TODD A. SPIEGELMAN
Assistant Attorney General
*Of Counsel*

# TABLE OF CONTENTS

Preliminary Statement ............................................................................................................ 1

Statement of Facts ................................................................................................................. 2

    A. The COVID-19 Pandemic and EO 205.1 ........................................................................ 2

    B. Plaintiff's Lawsuit and Motion ........................................................................................ 4

Argument ............................................................................................................................... 5

I.      PLAINTIFF CANNOT DEMONSTRATE A CLEAR OR SUBSTANTIAL
        LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE THE EXECUTIVE
        ORDER IS CONSTITUTIONAL UNDER THE STANDARD APPLICABLE TO
        GOVERNMENT ACTION TO COMBAT EPIDEMICS ................................................. 6

II.    ALL OF PLAINTIFF'S CLAIMS ARE UNLIKLEY TO SUCCEED ON THE MERITS
        FOR ADDITIONAL, INDEPENDENT REASONS ...................................................... 8

    A. Plaintiff's Supremacy Clause Claim Is Unlikely to Succeed on the Merits ...................... 8

    B. Plaintiff's Due Process Claims Are Unlikely to Succeed on the Merits .......................... 11

    C. Plaintiff's Privileges and Immunities Clause Claim Is Unlikely to
       Succeed on the Merits ................................................................................................. 13

III.   PLAINTIFF HAS NOT DEMONSTRATED IRREPARABLE HARM ....................... 14

IV.   THE PUBLIC INTEREST AND THE BALANCE OF THE EQUITIES FAVOR
        GOVERNOR CUOMO'S EFFORTS TO PROTECT NEW YORK'S CITIZENS FROM
        A GLOBAL PANDEMIC ............................................................................................. 16

Conclusion ............................................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Abdi v. Wray,
942 F.3d 1019 (10th Cir. 2019) ............................................................13

Altria Group, Inc. v. Good,
555 U.S. 70 (2008)...................................................................................8

Am. Mfs. Mut. Ins. Co. v. Sullivan,
526 U.S. 40 (1999)................................................................................11

Arizona v. U.S.,
567 U.S. 387 (2012)..............................................................................10

Bach v. Pataki,
408 F.3d 75 (2d Cir. 2005)....................................................................13

Barrett v. Harwood,
967 F. Supp. 744 (N.D.N.Y. 1997) .......................................................15

Bayley's Campground Inc. v. Mills,
463 F. Supp. 3d 22 (D. Maine 2020) ....................................................16

Beal v. Stern,
184 F.3d 117 (2d Cir. 1999).....................................................................5

Califano v. Aznavorian,
439 U.S. 170 (1978)..............................................................................13

Carmichael v. Ige,
470 F. Supp. 3d 1133 (D. Haw. 2020) ..................................................13

Charles v. Orange Cty.,
925 F.3d 73 (2d Cir. 2019)....................................................................12

Columbia Cty. Corr. Officer's Benevolent Ass'n, Local 3828 v. Murell,
No. 20-cv-0684, 2020 WL 5074194 (N.D.N.Y. Aug. 27, 2020) ...........16

Columbus Ale House v. Cuomo,
No. 20-cv-4291, 2020 WL 6118822 (E.D.N.Y. Oct. 16, 2020) (Cogan, J.)............6

Conn. Dep't of Envtl. Prot. v. OSHA,
356 F.3d 226 (2d Cir. 2004)..................................................................15

*Cunney v. Bd. Of Trs. Of Grand View*,
    660 F.3d 612 (2d Cir. 2011)..............................................................................12

*Doe v. N.Y.U.*,
    666 F.2d 761 (2d Cir. 1981)................................................................................5

*Galvin v. N.Y. Racing Ass'n*,
    70 F. Supp. 2d 163 (E.D.N.Y. 1998) ...............................................................15

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
    425 F.3d 158 (2005)..........................................................................................12

*Haig v. Agee*,
    453 U.S. 280 (1981)..........................................................................................13

*Henderson v. Mayor of City of N.Y.*,
    92 U.S. 259 (1875)............................................................................................11

*In re Abbott*,
    954 F.3d 772 (5th Cir. 2020) ..............................................................................6

*In re Rutledge*,
    956 F.3d 1018 (8th Cir. 2020) ............................................................................6

*Jacobson v. Commonwealth of Mass.*,
    197 U.S. 11 (1905)..........................................................................................6-7

*Kansas v. Garcia*,
    140 S. Ct. 791 (2020)........................................................................................10

*L&M Bus Corp. v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*,
    No. 18-cv-1902, 2018 WL 2390125 (E.D.N.Y. May 25, 2018)........................5

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996)............................................................................................9

*N.Y.S. Rest. Ass'n v. N.Y.C. Bd. of Health*,
    556 F.3d 114 (2d Cir. 2009)...............................................................................9

*Nken v. Holder*,
    556 U.S. 418 (2009)............................................................................................5

*Page v. Cuomo*,
    2020 WL 4589329 (N.D.N.Y. Aug. 11, 2020) ...........................................12-13

*People ex. rel. Schneiderman v. Actavis PLLC*,
    787 F.3d 638 (2d Cir. 2015)...............................................................................5

*Rodriguez by Rodriguez v. DeBuono*,
    175 F.3d 227 (2d Cir. 1999)........................................................ 14-15

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
    141 S. Ct. 63 (2020)......................................................................7

*Sajous v. Decker*,
    No. 18-cv-2447, 2018 WL 2357266 (S.D.N.Y. 2018) ..........................14

*Torraco v. Port Auth. of New York & New Jersey*,
    615 F.3d 129 (2d Cir. 2010)..........................................................14

*Town of Southold v. Town of East Hampton*,
    477 F.3d 38 (2d Cir. 2007)...........................................................14

*Winter v. Natural Res. Defense Council, Inc.*,
    555 U.S. 7 (2008)..........................................................................5

## UNITED STATES CONSTITUTION

First Amendment ................................................................6-7, 14-15

Art., IV, § 2 ...............................................................................13

Due Process Clause......................................................................4, 12

Free Exercise Clause........................................................................7

Privileges and Immunities Clause................................................. 4, 13-14

Supremacy Clause.................................................................. passim

## FEDERAL STATUTES

6 U.S.C. § 211.................................................................................9

Defendant Andrew M. Cuomo, sued here in his personal capacity and in his official capacity as Governor of the State of New York ("Governor"), respectfully submits this memorandum of law, together with the accompanying Declaration of Nora K. Yates, dated January 7, 2021 ("Yates Decl."), and the exhibits annexed thereto, in opposition to Plaintiff Yoel Weisshaus's motion for a preliminary injunction against the Governor's Executive Order ("EO") 205.1 (ECF No. 12).

## **Preliminary Statement**

In this action, Plaintiff seeks to disrupt New York's response to the greatest public health crisis of the 21st Century—all to avoid a brief stop at the airport to complete a two-page health form. Plaintiff moves to enjoin the enforcement of EO 205.1, which requires travelers entering New York from countries where COVID-19 is prevalent to quarantine for 14 days and to complete a travelers health form.[1] The New York State Department of Health ("DOH") utilizes the information gathered from this form to determine which travelers must quarantine and to ensure that they do so. Granting Plaintiff the relief he seeks would reduce compliance with the quarantine requirements and, inevitably, result in a greater spread of the highly contagious, and deadly, novel coronavirus.

Plaintiff's motion should be denied because he cannot satisfy the high standard for obtaining the extraordinary remedy of a preliminary injunction. Among other fatal defects, Plaintiff's claims are unlikely to succeed on the merits as the health form requirement clearly furthers the State's pressing need to combat the spread of COVID-19—and thus easily passes constitutional muster under the deferential standard generally applicable to state measures

---

[1] Plaintiff's preliminary injunction motion erroneously purports to challenge EO 205.2, Yates Decl. Ex. F, which allows travelers to "test out" of the 14-day quarantine period with two negative COVID-19 test results. But it is EO 205.1, *id.* Ex. E, setting forth the health form requirement for international travelers, which is actually at issue here.

designed to fight the pandemic.

Each of Plaintiff's claims fails for three independent reasons. <u>First</u>, Plaintiff's Supremacy Clause claim is devoid of merit because the State's collection of basic information from travelers to fight a pandemic does not usurp the U.S. Customs and Border Protection's ("Customs'") role in interdicting criminals or regulating international trade. <u>Second</u>, Plaintiff's Due Process claims fail to satisfy applicable legal standards because requiring the completion of a short form in order to help save lives during a pandemic is plainly not an egregious governmental action that shocks the conscience. <u>Third</u>, Plaintiff's right to travel is hardly burdened by having to take a few minutes to fill out a form.

Plaintiff also fails to demonstrate irreparable harm, as required to grant the requested injunctive relief. Specifically, the <u>only</u> injury Plaintiff claims is that he is being denied entry into the country if he does not complete the health form, yet the penalty for failing to complete the form is a fine, not forced removal from the United States.

Lastly, the balance of equities and the public interest weigh overwhelmingly in favor of the State's efforts to protect New Yorkers from potential deadly harm, as opposed to Plaintiff's inconvenience in completing a two-page form.

In short, Plaintiff fails to satisfy <u>any</u> of the elements necessary to obtain a preliminary injunction, and his motion should be denied.

**<u>Statement of Facts</u>**

**A. The COVID-19 Pandemic and EO 205.1**

As the Court is well aware, the world remains in the midst of a global pandemic that, to date, has killed more than a million people and has disrupted the lives of many millions more. The consequences of the COVID-19 pandemic have been particularly severe in New York State,

which has enacted various emergency measures in response.

In March 2020, the first case of this deadly virus was reported in New York State.[2] The Governor responded immediately by, among other actions, issuing a series of executive orders designed to combat the spread of COVID-19.[3] Among them are orders that aim to reduce transmission of the virus from travelers entering the State from high-risk locations. Specifically, in June 2020, the Governor issued EO 205, which, together with a summary order from DOH, required travelers entering New York from states where COVID-19 was prevalent to (1) quarantine for 14 days, consistent with DOH regulations and guidance from the U.S. Centers for Disease Control and Prevention ("CDC"), and (2) complete a health form. Yates Decl. ¶¶ 5-9 & Exs. A, C. On September 28, 2020, the Governor issued EO 205.1, which expanded on EO 205 and directed travelers entering the State from moderate- to high-risk countries to quarantine and complete the health form. *Id.* ¶ 10 & Ex. E.

The health form notifies travelers of the quarantine requirements and requests, *inter alia*, their contact information, the locations that they travelled to, and their symptoms, if any. *Id.* Ex. J. The health form is utilized to determine which travelers must quarantine and to contact these travelers to ensure compliance with quarantine requirements and to engage in contact tracing, if necessary. *Id.* ¶¶ 13-14 & Ex. J. Travelers who do not complete the health form are subject to a civil penalty of up to $10,000 and, potentially, a quarantine, if ordered after a hearing. *Id.* ¶ 9, Exs. D at 4, E. The health form is thus a vital element of the State's multi-pronged approach to reduce the spread of COVID-19.

---

[2] *See* DOH, COVID-19 Tracker, https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-DailyTracker?%3Aembed=yes&%3Atoolbar=no&%3Atabs=n (last visited January 7, 2021).
[3] *See generally* Governor Cuomo's Executive Orders, *available at* https://www.governor.ny.gov/executiveorders (last visited January 7, 2021).

**B. Plaintiff's Lawsuit and Motion**

Plaintiff filed this action on December 1, 2020, and moved for a preliminary injunction three weeks later, submitting an unsigned affirmation in support. ECF No. 12-1, Plaintiff's Affirmation, dated December 23, 2020 ("Pl. Aff."). Plaintiff asserts that he is a New Jersey resident who arrived at JFK airport on November 18, 2020 after traveling overseas. Pl. Aff. ¶ 4. He alleges that he was "granted entry to [the] United States" by Customs, which provided him with a pamphlet from the CDC and asked him a few questions about whether he had symptoms for COVID-19. Pl. Aff. ¶¶ 5-6. Plaintiff does not claim that Customs advised him to quarantine, provided him information about how to quarantine, or followed up with him to ensure compliance.

After Plaintiff exited the Customs area and collected his luggage, "Defendant's agent" requested that he complete a health form. Plaintiff objected and was told that "you cannot leave until you complete this form." Pl. Aff. ¶¶ 8-9. He then apparently completed the form and left the airport without further incident. Plaintiff alleges that he will return from another trip overseas on January 13, 2021, and, consequently, he will again be required to complete a health form. Pl. Aff. ¶¶ 13-14.[4]

Plaintiff claims that EO 205.1 and the health form violate the Supremacy Clause (ECF No. 1, Compl. Counts I and III), Due Process Clause (*id.* Count II), and Privileges and Immunities Clause (*id.* ¶ 2) of the United States Constitution. He asks this Court to issue a preliminary injunction: (1) entering a judgment "holding that the Executive Order is preempted by Federal law"; (2) enjoining the Governor from "imposing any conditions supplementary or complimentary to those practiced by . . . Customs"; and (3) enjoining the Governor from using

---

[4] Notably, Plaintiff was aware of his planned trip and his return date in November 2020, but waited a month to file this motion. Pl. Aff. ¶ 13.

any information obtained from the health form. ECF No. 12-2, Pl. Memorandum of Law in Support of his Motion for Preliminary Injunction ("Pl. Mem.") ¶ 26.

<u>**Argument**</u>

As this Court is aware, a preliminary injunction is "an extraordinary remedy <u>never</u> awarded as of right." *Winter v. Natural Res. Defense Council, Inc*., 555 U.S. 7, 24 (2008) (emphasis added). Plaintiff bears the burden of establishing (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of injunctive relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Id.* at 20. The final two factors—the balance of the equities and the public interest—"merge when the Government is the opposing party." *L&M Bus Corp. v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 18-cv-1902, 2018 WL 2390125, at *13 (E.D.N.Y. May 25, 2018) (*quoting Nken v. Holder*, 556 U.S. 418, 435 (2009)).

In addition, the Second Circuit has "held the movant to a heightened standard" where, as here: (i) an injunction is "mandatory" (*i.e.*, altering the status quo rather than maintaining it) or (ii) the injunction "will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *People ex. rel. Schneiderman v. Actavis PLLC*, 787 F.3d 638, 650 (2d Cir. 2015). In such cases, "the movant must show a 'clear' or 'substantial' likelihood of success on the merits and make a 'strong showing' of irreparable harm, in addition to showing that the preliminary injunction is in the public interest." *Id.* (*quoting Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999) and *Doe v. N.Y.U.*, 666 F.2d 761, 773 (2d Cir. 1981)). Plaintiff here must meet the higher standard because he is seeking to alter the status quo by preventing the State from using the health form to assist it in its efforts to combat this deadly and highly contagious virus.

Plaintiff cannot meet this heightened standard: He cannot demonstrate a "clear" or

"substantial" likelihood of success on the merits, he has not made (and cannot make) an adequate showing of irreparable harm arising from the health form requirement, and the public interest in protecting New Yorkers from a deadly disease overwhelmingly weighs in favor of denying Plaintiff's motion to exempt him from the health form requirement.

## I.   PLAINTIFF CANNOT DEMONSTRATE A CLEAR OR SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE THE EXECUTIVE ORDER IS CONSTITUTIONAL UNDER THE STANDARD APPLICABLE TO GOVERNMENT ACTION TO COMBAT EPIDEMICS

In *Jacobson v. Commonwealth of Mass.*, the Supreme Court made clear that a state must be given the wide latitude to enact measures to "protect itself against an epidemic of disease which threatens the safety of its members." 197 U.S. 11, 25, 27 (1905). In light of these concerns, *Jacobson* explained the standard for evaluating constitutional challenges to state action designed to combat an epidemic. Under this standard—which is more deferential to the state than the principles that would control in ordinary times—the state's action must be upheld <u>unless</u> the action "has no real or substantial relation to" the object of protecting the public or is "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Id.* at 27, 31.

Courts in this Circuit and around the country have repeatedly declined to enjoin state actions that have been enacted to combat the COVID-19 pandemic, based on the *Jacobson* precedent. *See, e.g.*, *In re Abbott*, 954 F.3d 772, 777 (5th Cir. 2020) (applying *Jacobson* standard to executive order postponing non-essential medical procedures); *In re Rutledge*, 956 F.3d 1018, 1027–32 (8th Cir. 2020) (applying *Jacobson* standard to directive requiring postponement of all elective and non-emergency surgical procedures); *Columbus Ale House v. Cuomo*, No. 20-cv-4291, 2020 WL 6118822, at *3-4 (E.D.N.Y. Oct. 16, 2020) (Cogan, J.) (applying *Jacobson* standard to substantive due process claim challenging executive order requiring restaurants to close at midnight).

To be sure, in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), the Supreme Court did not apply the *Jacobson* standard in finding that a church and synagogue were likely to succeed on claims challenging COVID-19-related occupancy restrictions in New York houses of worship. *Id.* at 66-67. But that opinion related only to claims asserted by religious groups under the First Amendment Free Exercise Clause, with the Court analyzing whether the restrictions were "neutral" and of "general applicability." *Id.* Nothing in the *Diocese* opinion disturbs *Jacobson's* applicability where non-religious rights are at issue. In fact, the concurring opinions clarify that the *Jacobson* standard still applies in most contexts. *Id.* at 74 (Kavanaugh, J., concurring) (noting that "[s]ubstantial deference" to state and local authorities is appropriate during a pandemic, especially where the issue is not "religious discrimination, racial discrimination, free speech, or the like"); *id.* at 70-71 (Gorsuch, J., concurring) (suggesting that courts may uphold states' "emergency restrictions" on certain rights, including substantive due process rights, though not on religious exercise). As Plaintiff in this case does not assert a free exercise claim, a claim of religious or racial discrimination, or any claim under the First Amendment, the *Jacobson* standard applies to all of his claims.

Simply stated, EO 205.1 easily passes muster under the two-part *Jacobson* standard. First, there can be no doubt that the health form and, where necessary, the quarantine requirement bear a "real or substantial relation to" the objective of protecting the public from the scourge of COVID-19. It is indisputable that large numbers of people come into the State from areas with high rates of infection, and that the virus spreads when people come in close contact with each other.[5] Measures taken to ensure that potentially infected travelers have isolated

---

[5] WHO Scientific Brief: Transmission of SARS-CoV-2: Implications for Infection Prevention Precautions, *available at* https://www.who.int/news-room/commentaries/detail/transmission-of-sars-cov-2-implications-for-infection-prevention-precautions (last visited January 7, 2021).

themselves until they are free of the virus bear a real or substantial relation to protecting the public from the COVID-19 pandemic and the possibility that New York's health care system will once again become overwhelmed by a flood of new COVID-19 cases.

Further, it is clear that EO 205.1 does <u>not</u> constitute a "plain, palpable invasion" of any constitutional right. Plaintiff seeks the injunction solely based upon his Supremacy Clause claim, which concerns the authority of federal law vis-à-vis the states, and not based upon any personal constitutional right. In any event, the health form requirement is a common-sense measure intended to protect the public from a deadly virus.

In short, the health form and, where applicable, the quarantine requirement bear both a "real" and a "substantial" relationship to the State's efforts to arrest the spread of this deadly virus and to protect New Yorkers, and they do not, even remotely, invade on any constitutionally protected right. Accordingly, Plaintiff's preliminary injunction motion must be denied.

## II. ALL OF PLAINTIFF'S CLAIMS ARE UNLIKELY TO SUCCEED ON THE MERITS FOR ADDITIONAL, INDEPENDENT REASONS

This motion—and indeed, Plaintiff's entire lawsuit—can be properly disposed of based on *Jacobson* alone. Nonetheless, each of Plaintiff's claims is deficient for other reasons as well.

### A. Plaintiff's Supremacy Clause Claim Is Unlikely to Succeed on the Merits

Under the Supremacy Clause, "'state laws that conflict with federal law are without effect.'" *N.Y.S. Rest. Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009) (quoting *Altria Group, Inc. v. Good,* 555 U.S. 70, 76 (2008)). However, there is a strong presumption <u>against</u> the preemption of state laws. "[W]e start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress. The presumption against preemption is heightened 'where federal law is said to bar state action in fields of traditional state regulation.' Given the traditional

'primacy of state regulation of matters of health and safety, courts assume that state and local regulation related to [those] matters . . . can normally coexist with federal regulations.'" *N.Y.S. Rest. Ass'n*, 556 F.3d at 123 (internal citations omitted); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996) ("States traditionally have great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons.").

EO 205.1 protects the health of New Yorkers by ensuring that travelers arriving from other countries presenting a greater risk of being infected by the novel coronavirus are aware of and compliant with quarantine requirements. Because the Executive Order concerns a "matter of health and safety," the presumption against preemption applies and can only be rebutted if Congress clearly manifested an intent to supersede the Executive Order. Congress has not manifested any such intent.

Plaintiff references only <u>one</u> federal statutory provision, 6 U.S.C. § 211, which established Customs within the Department of Homeland Security. Citing the statute, Plaintiff claims that Customs' main responsibility is to "detect, respond to [sic] . . . persons who may undermine the security of the United States." Pl. Mem. ¶ 15 (quoting § 211(c)(5)). But the ellipsis omits <u>whom</u> Customs is targeting: "terrorists, drug smugglers and traffickers, [and] human smugglers and traffickers." In the area of national security, the role of Customs—and of the "National Targeting Center" also mentioned by Plaintiff—is "to fight international terrorists and criminals," not to gather health information in order to limit the spread of a contagious disease. *See* Customs, National Targeting Center, *available at* https://www.cbp.gov/frontline/cbp-national-targeting-center; § 211(g)(4)(C). And with respect to commerce, Customs' duties are to "facilitate and expedite the flow of legitimate travelers and trade." 6 U.S.C. § 211(c)(3), *id.* § 211(c)(9). Customs' responsibilities in the areas of national

security and international trade are not in any way related to the State's collection of health information from travelers to fight a global pandemic. EO 205.1 and the enabling statute for Customs do not even regulate the same field, let alone conflict in a way that could implicate the Supremacy Clause. The State is plainly entitled to impose a simple health form completion requirement without running afoul of federal law.

At bottom, Plaintiff's Supremacy Clause claim is based on the misconception that if a traveler failed to submit the health form, he or she would be "den[ied] entry." Pl. Mem. ¶ 17. But EO 205.1 only authorizes "a civil penalty" in those circumstances. It does not deny anyone admission into the United States. The State is certainly cognizant that Congress "specifie[s] which aliens may be removed from the United States," *Arizona v. U.S.*, 567 U.S. 387, 396 (2012), and this Executive Order does not direct, or even contemplate, refusal of entry or removal from the United States. Plaintiff's reliance on the Customs laws is entirely misplaced.

Plaintiff is left only with his claim that Defendant's agent told him he could not leave the airport until he completed the health form. From that, he would have the Court infer that if he refused to complete the form, the agent either would have forcibly ejected him from the United States or forced him to wander the terminal for the rest of his days. But nothing of the sort would have—or did—happen to Plaintiff, and the Court should decline his invitation to speculate based on absurd scenarios.

Plaintiff's remaining arguments are similarly unavailing. The advisory guidance from the CDC (Compl. Ex. A) is not a federal law that could trigger preemption. As the Supreme Court recently held, "'[t]here is no federal preemption *in vacuo*,' without a constitutional text, federal statute, or treaty made under the authority of the United States." *Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020); *id.* at 807 ("The Supremacy Clause gives priority to 'the Laws of the United

States,' not the . . . priorities or preferences of federal officers.").

Moreover, guidance issued by the CDC surely does not conflict with the State's health form requirement. Indeed, the CDC itself advises all travelers to "always follow state and local recommendations or requirements related to travel." Yates Decl. ¶ 12 & Exs. H at 1.

Finally, Plaintiff's reliance on the almost 150 year-old case, *Henderson v. Mayor of City of N.Y.*, 92 U.S. 259 (1875) (Pl. Mem. ¶ 13), is entirely misplaced and, in fact, supports the State's health form requirement. In *Henderson*, the Supreme Court found that a New York law that essentially placed a tax on immigrants infringed on the federal government's regulation of the "active commerce with foreign nations." *Id.* at 267, 273. However, EO 205.1 does not place a tax on travelers affecting commerce—the health form is given to both interstate and international travelers. And, most importantly, the purpose of the Executive Order is to safeguard the public health—an area where the *Henderson* Court itself recognized the State's primacy. *Id.* at 271 ("preservation of . . . health and comfort" is "reserved to the States").

For any or all of these reasons, there is no likelihood that Plaintiff could show a violation of the Supremacy Clause.

### B.   Plaintiff's Due Process Claims Are Unlikely to Succeed on the Merits

Plaintiff does not claim in his motion that he is likely to succeed on the merits of his substantive and procedural due process claims. This is not surprising in light of the fact that these claims are baseless. Nonetheless and in an abundance of caution, Governor Cuomo addresses and disposes of them.

To establish a violation of his substantive due process rights, a plaintiff must demonstrate that he "has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). "In order to establish a violation of a right to substantive

due process, a plaintiff must demonstrate . . . that the government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Charles v. Orange Cty.*, 925 F.3d 73, 85 (2d Cir. 2019). Substantive due process rights do not protect against government action that is merely "incorrect or ill-advised." *Cunney v. Bd. of Trs. Of Grand View*, 660 F.3d 612, 626 (2d Cir. 2011).

Plaintiff has not asserted a property interest, and even assuming that his liberty interests were implicated by the brief stop needed to complete the health form, his substantive due process claim would still fail. Requiring travelers entering New York to complete a two-page form in order to protect the public health during a pandemic, indeed, to help save lives, could hardly be deemed conscience-shocking conduct. To the contrary, "[p]roviding for the public health and safety is among the state's most significant policy priorities and is at the core of the state's police power." *Parkway Hosp. v. Daines*, No. 09-CV-7507, 2010 WL 3000018, at *2 (S.D.N.Y. July 20, 2010). There was no substantive due process violation here.

Plaintiff also fails to demonstrate that EO 205.1 deprived him of any procedural due process rights. An individual does not have a right to notice and a hearing on laws enacted by a governmental body that are generally applicable to the public. *See Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 174 (2005) ("[o]fficial action that is legislative in nature is not subject to the notice and hearing requirements of the due process clause"). As EO 205.1 indisputably sets forth generally applicable requirements for the public, Plaintiff's procedural due process claim fails. Summary action to protect the public health is clearly justified in emergency situations, and "the COVID-19 pandemic is precisely the 'scenario for which emergency action would be expected.'" *Page v. Cuomo*, 2020 WL 4589329, at *12 (N.D.N.Y. Aug. 11, 2020) (dismissing due process challenge to quarantine requirement in EO 205). Plaintiff

has no viable due process claim.

**C. Plaintiff's Privileges and Immunities Clause Claim Is Unlikely to Succeed on the Merits**

Plaintiff does not base his preliminary injunction motion on his Privileges and Immunities Clause claim. Nonetheless and out of an abundance of caution, the Governor asserts (and shows) that such a claim is patently unavailing.

"The 'right to travel' . . . is at the core of every Privileges and Immunities Clause challenge. *Bach v. Pataki*, 408 F.3d 75, 78 (2d Cir. 2005), *overruled on other grounds by McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010); *see also* U.S. Const., Art. IV, § 2 ("The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."). But unlike the well-recognized right of interstate travel, the "'right' of international travel has been considered no more than a 'liberty' interest protected by the Due Process Clause." *Haig v. Agee*, 453 U.S. 280, 307 (1981) (quoting *Califano v. Aznavorian*, 439 U.S. 170, 176 (1978)); *Abdi v. Wray*, 942 F.3d 1019, 1029 (10th Cir. 2019) (same). Thus, because Plaintiff here has not asserted a tenable due process violation, his claim of infringement of his right to international travel fails as well.

Moreover, even in cases concerning the "virtually unqualified" right to <u>interstate</u> travel, *id.*, courts have held that state-mandated 14-day quarantines for travelers do not impermissibly burden the right to travel. *Carmichael v. Ige*, 470 F. Supp. 3d 1133, 1145 (D. Haw. 2020); *Page*, 2020 WL 4589329, at *11 ("far from clear" that EO 205 mandating 14-day quarantine for individuals entering New York burdened the right to travel). Here, Plaintiff complains not of a two-week quarantine, but of a travel delay of a few minutes needed to complete paperwork. That plainly does not burden his circumscribed right to <u>international</u> travel.

The Second Circuit has repeatedly held that "'minor restrictions on travel simply do not

amount to the denial of a fundamental right.'" *Torraco v. Port Auth. of New York & New Jersey*, 615 F.3d 129, 140–41 (2d Cir. 2010) (quoting *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 53 (2d Cir. 2007)). Such "minor restrictions" have been found to include arresting and detaining an airline passenger for more than one day. *Id.* at 133-34, 141. Plaintiff's claim of a brief stop at the airport to complete a form is far less intrusive than an arrest and a detention.

To the extent that Plaintiff even has a right to travel internationally, that right has not been burdened in any way, as a matter of law. Thus, he cannot succeed on such a claim under the Privileges and Immunities Clause.

## III. PLAINTIFF HAS NOT DEMONSTRATED IRREPARABLE HARM

"In the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied." *Rodriguez by Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (internal quotation marks and citation omitted). Plaintiff utterly fails to demonstrate that he stands to suffer irreparable harm—indeed, he barely attempts to make such a showing.

Plaintiff claims that he has been harmed based on his fear that he will be detained at the airport indefinitely if he does not complete the health form. Pl. Mem. ¶ 21. There is simply no basis for Plaintiff's fear: Apparently, he has never been detained because he refused to complete the health form; he has not identified anyone else who has been detained because of such non-compliance; and, as EO 205.1 makes clear, failure to complete the health form results in a civil penalty, not detention.[6]

Most importantly and in any event, such a fear does not constitute a harm, much less an "irreparable" harm, as a matter of well-settled law and well-settled fact. Plaintiff's fear is pure

---

[6] The situation here clearly differs from the case cited by Plaintiff (Mem. ¶ 19), *Sajous v. Decker*, No. 18-cv-2447, 2018 WL 2357266, at *1 (S.D.N.Y. 2018), where an alien subject to removal from the United States for committing crimes of moral turpitude, was detained for eight months.

speculation and entirely insufficient to establish irreparable harm. *See Rodriguez*, 175 F.3d at 234 (to show irreparable harm, "[t]he movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages. . . .").

Moreover, as a factual matter, the claimed harm of detention is not irreparable—it is "repaired" once he completes the form. While Plaintiff claims that the form requests his "personal information," Pl. Aff. ¶ 5, he does not assert that he was harmed by disclosing such information in the past or that he would be in the future.

Rather than undertaking any serious effort to show irreparable harm, Plaintiff simply declares any such exercise to be unnecessary, asserting that "the alleged violation of a constitutional right triggers a finding of irreparable injury." Pl. Mem. ¶ 19 (quoting *Conn. Dep't of Envtl. Prot. v. OSHA*, 356 F.3d 226, 231 (2d Cir. 2004)). Plaintiff misunderstands the law in this Circuit: A series of court decisions limits the presumption of harm to cases involving the First Amendment and related rights. *See, e.g., Galvin v. N.Y. Racing Ass'n*, 70 F. Supp. 2d 163, 190 (E.D.N.Y. 1998) (while irreparable harm is presumed in First Amendment cases, "violation of due process rights, without more, is insufficient to establish irreparable harm"); *Barrett v. Harwood*, 967 F. Supp. 744, 746 (N.D.N.Y. 1997) ("the cases where courts have held that a constitutional deprivation amounts to an irreparable harm—are almost entirely restricted to cases involving alleged infringements of free speech, association, privacy, or other rights as to which temporary deprivation is viewed of such qualitative importance as to be irremediable by any subsequent relief . . . ."). Plaintiff does not assert any First Amendment claims here, and therefore, he cannot show irreparable harm merely by claiming a violation of his constitutional rights.

Notably, in claiming that irreparable harm exists wherever a constitutional violation involves "noncompensable damages," Plaintiff again misunderstands and misconstrues the law. Pl. Mem. ¶ 22 (citing *Columbia Cty. Corr. Officer's Benevolent Ass'n , Local 3828 v. Murell*, No. 20-cv-0684, 2020 WL 5074194, at *9 (N.D.N.Y. Aug. 27, 2020)). In *Murell*, the court expressly held that irreparable harm requires a "constitutional deprivation [that] is convincingly shown <u>and</u> that [the] violation carries noncompensable damages." *Id.* (emphasis added). A constitutional deprivation is "convincingly shown" by demonstrating "a likelihood of success on the merits," *id.*, which Plaintiff here has utterly failed to do.

Plaintiff has not established (and cannot establish) any "irreparable harm" caused by the requirement to complete the two-page health form.

IV.     **THE PUBLIC INTEREST AND THE BALANCE OF THE EQUITIES FAVOR GOVERNOR CUOMO'S EFFORTS TO PROTECT NEW YORK'S CITIZENS FROM A GLOBAL PANDEMIC**

Finally, the balance of the equities and public interest prongs of the preliminary injunction standard compel the denial of Plaintiff's motion. The State's interest in protecting New Yorkers against a deadly pandemic is overwhelming, and it vastly outweighs the supposed harms that Plaintiff claims he will suffer. *See Bayley's Campground Inc. v. Mills,* 463 F. Supp. 3d 22, 38 (D. Maine 2020) (the public interest at issue in the challenge to Maine's 14-day self-quarantine requirement was "enormous" and outweighed plaintiffs' showing as to their own harm).

Plaintiff makes no serious effort to argue that the minimal potential harms he alleges could outweigh those posed to New York and the general public in the event the Court were to enjoin the enforcement of EO 205.1. Instead, he claims that the public interest is weakened by "denying entry into the United States to citizens who have already been cleared by Customs." Pl. Mem. ¶ 24. But, as the Governor makes clear, EO 205.1 does not deny anyone entry into the

United States.

The Executive Order and the health form further the public interest by ensuring that individuals at a high risk of infection comply with quarantine requirements in order to reduce the spread of COVID-19. Saving the lives of New Yorkers must surely outweigh any harm that could befall Plaintiff as a result of completing a simple two-page health form.

There is no question that the balance of equities and the furtherance of the public's health, safety, and welfare favor the continuation and enforcement of EO 205.1.

## Conclusion

For the foregoing reasons, Plaintiff's motion for a preliminary injunction should be denied.

Dated: New York, New York
       January 7, 2021

                                  LETITIA JAMES
                                  Attorney General
                                  State of New York
                                  *Attorney for Defendants*
                                  28 Liberty Street
                                  New York, New York 10005

                                  By: _____/S/_____
                                  Todd A. Spiegelman
                                  Assistant Attorney General
                                  (212) 416-8661
                                  Todd.Spiegelman@ag.ny.gov