UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
YOEL WEISSHAUS,                                              :
                                                             :      **MEMORANDUM**
                                      Plaintiff,             :      **DECISION AND ORDER**
                                                             :
                 - against -                                 :      20-cv-5826 (BMC)
                                                             :
ANDREW CUOMO in his official and                             :
individual capacity,                                         :
                                                             :
                                      Defendant.             :
                                                             :
------------------------------------------------------------ X

**COGAN**, District Judge.

        In September 2020, the Governor of New York issued Executive Order 205.1 in response
to the ongoing COVID-19 pandemic.  The Order requires, among other things, that certain
travelers complete the "New York State Traveler Health Form."  Travelers must disclose
whether they have arrived from a country with a moderate or high rate of COVID-19, whether
they have recently tested positive for the disease, and whether they have recently experienced
any symptoms.

        Plaintiff Yoel Weisshaus moves for a preliminary injunction of that requirement, arguing
that it violates numerous constitutional provisions.  I interpret the obscure complaint as raising
claims based on the Supremacy Clause, the constitutional right to interstate travel, the freedom of
international travel, the constitutional right to informational privacy, and the substantive
component of the Due Process Clause of the Fourteenth Amendment.  Because plaintiff cannot
show irreparable harm, a likelihood of success on the merits, or that the public interest weighs in
favor of an injunction, the motion is denied.

# BACKGROUND

## I.     The Executive Orders and the Traveler Health Form

In June 2020, the Governor issued Executive Order 205, authorizing the Commissioner of the Department of Health to issue a "travel advisory" along with "additional protocols for essential workers, or for other extraordinary circumstances, when a quarantine is not possible, provided such measures continue to safeguard the public health." The Commissioner then issued "Interim Guidance for Quarantine Restrictions on Travelers Arriving in New York State Following Out of State Travel." The document "sets forth the policies to be followed in New York State to effectuate the Department of Health travel advisory." It provides that all travelers must quarantine for fourteen days if they enter New York from states with high rates of COVID-19.

Soon after, the Commissioner issued an "Order for Summary Action," which provides that "all travelers subject to Executive Order No. 205 shall complete the New York State Traveler Health Form." Travelers must "submit the complete form to the New York officials stationed at the airport, or in a receptacle designated for such forms." The State offers additional information on its website:

> As part of the enforcement operation, enforcement teams will be stationed at airports statewide to meet arriving aircrafts at gates and greet disembarking passengers to request proof of completion of the State Department of Health traveler form, which is being distributed to passengers by airlines prior to, and upon boarding or disembarking flights to New York State.

> All out-of-state travelers must complete the form upon entering New York. Travelers who leave the airport without completing the form will be subject to a $10,000 fine and may be brought to a hearing and ordered to complete mandatory quarantine.[1]

---

[1] The Governor has attached a screenshot of this website to his opposition to the motion for a preliminary injunction. The website can be found at https://coronavirus.health.ny.gov/covid-19-travel-advisory.

The State has carved out certain exceptions for essential workers.

A few months later, in September, the Governor issued Executive Order 205.1. It modified Executive Order 205, requiring the Commissioner "to add to such travel advisory that travelers entering the United States from any country with a CDC Level 2 or Level 3 health notice . . . shall complete the Department of Health [T]raveler [H]ealth [F]orm or be subject to civil penalty pursuant to the Public Health Law and regulations of the Department of Health."[2]

The Traveler Health Form explains that "[i]n response to increased rates of COVID-19 transmission in the United States and other countries . . . [New York State] has issued a travel advisory for anyone entering [the state] from a non-bordering state or [who has] traveled internationally under a CDC level 2 (moderate risk) or 3 (high-risk) COVID-19 travel health notice." All travelers must disclose whether they have taken a COVID test and whether they have experienced any COVID symptoms in the last 72 hours. The form also asks travelers to disclose whether they have traveled to a CDC level 2 or 3 country in the last two weeks. If so, the travelers must disclose the country, the duration of their stay, and their destination in New York State. Travelers complete the form under penalty of perjury.

The Department of Health uses the data from the Traveler Health Form to enforce the quarantine requirement. If health officials determine that a traveler must quarantine, they text or call that person each day during the quarantine period. Health officials also enter the traveler's data into their system so they can perform contact tracing. The State maintains that all information is confidential.

---

[2] The "CDC" refers to the Centers for Disease Control and Prevention. The "levels" appear to reference the CDC's three-tiered system for "Travel Health Notices." For countries at "Alert Level 2," the CDC advises travelers to "[p]ractice enhanced precautions," and at "Alert Level 3," the CDC advises travelers to "[a]void all non-essential travel." <u>Travel Health Notices</u>, CTRS. FOR DISEASE CONTROL & PREVENTION (updated Jan. 4, 2021), https://wwwnc.cdc.gov/travel/notices#travel-notice-definitions.

## II.     Plaintiff's Allegations

On November 18, 2020, plaintiff landed at John F. Kennedy International Airport ("JFK") after traveling overseas.  At customs, federal officials handed him a pamphlet with information from the CDC, which explains that he "may have been exposed to COVID-19 while traveling" and instructs him how to "prevent others from getting sick."  Federal officials also asked if he had experienced any symptoms of COVID-19.  Plaintiff avers that he left the customs "screening area" and, within 100 feet, encountered "armed security person[nel]" who had "barricaded" an area.  They instructed him to complete the Traveler Health Form.  When he refused, one official said, "You cannot leave until you complete this form."  Plaintiff completed the form.  He returned home to New Jersey.

Soon after, plaintiff brought this suit under 42 U.S.C. § 1983, seeking damages and injunctive relief.  In an affirmation attached to his motion for a preliminary injunction, plaintiff revealed that he has scheduled another overseas trip for January 2021.  He will return to the United States on January 13.  By forcing him to fill out the form again, he argues, state officials will violate the Supremacy Clause, the Privileges or Immunities Clause of the Fourteenth Amendment, and the Due Process Clause of the Fourteenth Amendment.

Plaintiff asserts a litany of claims under these provisions, citing violations of his right to interstate travel, his freedom of international travel, his right to avoid disclosure of certain personal information, and his right to be free from an unlawful detention.  Due to this lack of clarity and the short timeframe for ruling on the motion, I denied plaintiff's request to consolidate the hearing for the preliminary injunction with a trial on the merits.  The parties also indicated at a conference that neither desired an evidentiary hearing or oral argument.[3]

---

[3] "[W]hile a hearing is generally required on motion for preliminary injunction, it is not required in all cases, such as cases in which the affidavits submitted by the parties provide an adequate basis for the court's decision (and the

**DISCUSSION**

## I.     The Preliminary Injunction Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). "For a preliminary injunction to issue, the movant must establish (1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor, and (2) irreparable harm in the absence of the injunction." Kelly v. Honeywell Int'l, Inc., 933 F.3d 173, 183–84 (2d Cir. 2019). The Second Circuit has recognized "limited exceptions to this general standard." Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 n.4 (2d Cir. 2010). As relevant here, a modified standard applies if the plaintiff "seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme." Id. (quoting Able v. United States, 44 F.3d 128, 131 (2d Cir. 1995)). The Second Circuit recently applied this standard in a challenge to one of the Governor's executive orders concerning COVID-19. Agudath Israel of Am. v. Cuomo, No. 20-3572, 2020 WL 7691715, at *6 (2d Cir. Dec. 28, 2020) (addressing restrictions on religious gatherings). Here, therefore, plaintiff "must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." Id. (quotation omitted). Since both irreparable harm and the likelihood of success on the merits require a claim-specific analysis, I will begin with the public interest analysis, for it applies equally to each claim at issue.

---

most significant factors on which the injunction was based would have remained essentially unchanged by any additional evidence at a hearing." Hafez v. City of Schenectady, No. 1:17-cv-219, 2017 WL 6387692, at *5 (N.D.N.Y. Sept. 11, 2017). Here, the filings provide an adequate basis for the Court's decision.

## II.    The Public Interest

Plaintiff cannot show that the public interest weighs in favor of granting the injunction. Outside the First Amendment/free exercise context, courts have overwhelmingly concluded that enjoining state health measures during this pandemic is not in the public interest.  See Geller v. Cuomo, No. 20-cv-4653, 2020 WL 4463207, at *10 & n.24 (S.D.N.Y. Aug. 3, 2020); cf. Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 70-71 (2020) (Gorsuch, J., concurring) (distinguishing substantive due process claims from free exercise claims); id. at 74 (Kavanaugh, J., concurring) (noting that federal courts "must afford substantial deference to state and local authorities about how best to balance competing policy considerations during the pandemic" but "judicial deference in an emergency or a crisis does not mean wholesale judicial abdication, especially when important questions of religious discrimination, racial discrimination, free speech, or the like are raised").

There is good reason to think that the public interest does not favor an injunction in this case.  In New York State alone, COVID-19 has claimed over 38,000 lives.[4]  It is spread through airborne transmission,[5] and travel can further the spread.[6]  As the CDC explains:

> Air travel requires spending time in security lines and airport terminals, which can bring you in close contact with other people and frequently touched surfaces. Social distancing is difficult in busy airports and on crowded flights, and sitting within 6 feet of others, sometimes for hours, may increase your risk of getting COVID-19.  How you get to and from the airport, such as with public transportation and ridesharing, can also increase your chances of being exposed to the virus. . . . You and your travel companions (including children) pose a risk to

---

[4] CDC COVID Data Tracker, CTRS. FOR DISEASE CONTROL & PREVENTION (updated Jan. 8, 2021), https://covid.cdc.gov/covid-data-tracker/#cases_totaldeaths.

[5] Scientific Brief: SARS-CoV-2 and Potential Airborne Transmission, CTRS. FOR DISEASE CONTROL & PREVENTION (updated Oct. 5, 2020), https://www.cdc.gov/coronavirus/2019-ncov/more/scientific-brief-sars-cov-2.html#:~:text=Airborne%20transmission%20is%20infection%20spread,(typically%20hours).

[6] Testing and International Air Travel, CTRS. FOR DISEASE CONTROL & PREVENTION (updated Jan. 8, 2021), https://www.cdc.gov/coronavirus/2019-ncov/travelers/testing-air-travel.html.

your family, friends, and community for 14 days after you were exposed to the
virus.

Even more worrisome, several countries are now grappling with a new, more contagious variant
of the disease.[7]

Only 579,000 people in New York have received the first dose of the vaccine,[8] and there
is no known cure.[9]  In combating the spread, contact tracing is one of the strongest weapons.[10]
Thus, as various courts have now concluded, "[w]eakening the State's response to [this] public-
health crisis by enjoining it from enforcing measures employed specifically to stop the spread of
COVID-19 is not in the public interest."  Luke's Catering Serv., LLC v. Cuomo, No. 20-cv-
1086S, 2020 WL 5425008, at *13 (W.D.N.Y. Sept. 10, 2020); see also Columbus Ale House,
Inc. v. Cuomo, No. 20-cv-4291, 2020 WL 6118822, at *5 (E.D.N.Y. Oct. 16, 2020) (same);
Ass'n of Jewish Camp Operators v. Cuomo, 470 F. Supp. 3d 197, 229 (N.D.N.Y. 2020) (same).

Of course, these measures come at a great cost.  Many cases have chronicled the
pandemic's economic toll.  See, e.g., Columbus Ale House, 2020 WL 6118822, at *5.  But those
cases put this one in perspective.  Many plaintiffs "b[ore] the very real risk of losing their
businesses."  Trainers, Inc. v. Whitmer, 814 F. App'x 125, 129 (6th Cir. 2020).  Others had to
forgo medical procedures.  See, e.g., In re Abbott, 954 F.3d 772, 780 (5th Cir. 2020).  Plaintiff,
in contrast, need only fill out a form before proceeding to his destination.  If the loss of one's

---

[7] Coronavirus Variant Is Indeed More Transmissible, New Study Suggests, N.Y. TIMES (updated Dec. 31, 2020),
https://www.nytimes.com/2020/12/23/health/coronavirus-uk-variant.html.

[8] CDC COVID Data Tracker, CTRS. FOR DISEASE CONTROL & PREVENTION (updated Jan. 11, 2021),
https://covid.cdc.gov/covid-data-tracker/#vaccinations.

[9] Information for Clinicians on Investigational Therapeutics for Patients with COVID-19, CTRS. FOR DISEASE
CONTROL & PREVENTION (updated Dec. 4, 2020), ttps://www.cdc.gov/coronavirus/2019-ncov/hcp/therapeutic-
options.html.

[10] Case Investigation and Contact Tracing: Part of a Multipronged Approach to Fight the COVID-19 Pandemic,
CTRS. FOR DISEASE CONTROL & PREVENTION (updated Dec. 3, 2020), https://www.cdc.gov/coronavirus/
2019-ncov/php/principles-contact-tracing.html.

livelihood does not surpass the public interest in combating the pandemic, plaintiff's burden does not even come close.

### III. The Supremacy Clause Claims

Arguing that Executive Order 205.1 violates the Supremacy Clause, plaintiff points to 6 U.S.C. § 211, the statute that established U.S. Customs and Border Protection ("CBP"). The statute sets out the agency's structure and duties. It empowers CBP to coordinate with other agencies to "enforce and administer . . . the inspection, processing, and admission of persons who seek to enter or depart the United States," § 211(c)(8)(A), and to "develop and implement screening and targeting capabilities, including the screening, reviewing, identifying, and prioritizing of passengers and cargo across all international modes of transportation, both inbound and outbound," § 211(c)(9). In plaintiff's view, this statute shows that the federal government "occupies the field of screening all persons entering into the United States." Because the Executive Order "subjected [p]laintiff to extra screening in excess to the procedure and practices executed by Customs and Border Protection," he continues, the Executive Order is unenforceable under the Supremacy Clause.

Regardless of the merits of this claim, plaintiff cannot show irreparable harm. Although "the *alleged* violation of a constitutional right" generally results in a presumption of irreparable harm, Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir. 1996), "the Supremacy Clause, of its own force, does not create rights," Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 107 (1989) (footnote omitted). It instead "creates a rule of decision: Courts 'shall' regard the 'Constitution,' and all laws 'made in Pursuance thereof,' as 'the supreme Law of the Land.'" Armstrong v. Exceptional Child Ctr., Inc., 575 U.S. 320, 324 (2015). Therefore, on a motion for a preliminary injunction, an alleged violation of the Supremacy Clause does not "trigger[]

irreparable harm *per se* because the Supremacy Clause is a structural provision of the Constitution that does not confer personal rights." <u>Livery Round Table, Inc. v. New York City FHV & Limousine Comm'n</u>, No. 18-cv-2349, 2018 WL 1890520, at \*10 (S.D.N.Y. Apr. 18, 2018) (citing <u>EEOC v. Local 638</u>, No. 71-cv-2877, 1995 WL 355589, at \*5 (S.D.N.Y. June 7, 1995). Plaintiff must point to some other harm. <u>See, e.g.</u>, <u>Am. Petroleum Inst. v. Jorling</u>, 710 F. Supp. 421, 432 (N.D.N.Y. 1989).

Although plaintiff alleges that enforcement of the Executive Order would also violate a federal statute, "the mere assertion that a plaintiff's federal statutory rights have been violated does not create a presumption of irreparable harm." <u>King v. Pine Plains Cent. Sch. Dist.</u>, 923 F. Supp. 541, 546 (S.D.N.Y. 1996). "Otherwise, the courts would presume irreparable harm in deciding every preliminary injunction motion made in cases brought under federal statutes. That is certainly not the law." <u>Id.</u> In any event, plaintiff has not established (or even argued) that he has any rights under 6 U.S.C. § 211, nor could he. The statute does not confer an individual right to be screened only by CBP; it simply tasks the agency with screening individuals who enter the United States.

Accordingly, plaintiff must rely on more concrete consequences of having to fill out the Traveler Health Form. This is difficult because if he complies, the burden is minimal. He must only provide the State with certain information about his travel, and that disclosure is quite different than the ones that result in irreparable harm. <u>See, e.g.</u>, <u>Faiveley Transp. Malmo AB v. Wabtec Corp.</u>, 559 F.3d 110, 118 (2d Cir. 2009) (trade secrets). Nor would that harm be irreparable; the court could enjoin the State from using that information for contact tracing or

enforcing the quarantine requirement.[11]  Alternatively, if plaintiff refuses to comply with the

Executive Order, he will face a substantial fine.  That harm is not irreparable because plaintiff

has "an adequate remedy at law."  Id. (quotation omitted); see also Gateway 2000 Country

Stores, Inc. v. Norwalk Zoning Bd. of Appeals, 13 F. Supp. 2d 247, 253 (D. Conn. 1998) (risk of

fines is not irreparable harm).

Plaintiff seems to suggest that State officials will also bar him from entering the United

States.  Regardless of whether that action would inflict irreparable harm, plaintiff has not

demonstrated that it will actually happen.  He has not cited any statute, regulation, or executive

order that confers that legal authority.  Executive Order 205.1 merely states that "travelers shall

complete the Department of Health [T]raveler [H]ealth [F]orm or be subject to civil penalty

pursuant to the Public Health Law and regulations of the Department of Health."  More

specifically, the State has stated that "[t]ravelers who leave the airport without completing the

form will be subject to a $10,000 fine and may be brought to a hearing and ordered to complete

mandatory quarantine."  That is quite different from barring the traveler from the United States.

Further, I cannot find, as a matter of fact, that New York officials are exceeding their

legal authority and preventing travelers from entering the country unless they complete the form.

The only evidence of such a practice is a single sentence in plaintiff's affirmation, where he

notes that State officials "refused to let [him] leave" until he completed the form.  But plaintiff

did complete the form, and thus I have to guess what would have happened if he had continued

to refuse.  Plaintiff has not suggested that he knows of any other travelers who could not enter

---

[11] Separately, plaintiff contends that the disclosure would be unconstitutional.  I address below whether that
constitutional violation amounts to irreparable harm.

the country because they refused to complete the form. On this record, I cannot find that New York officials are preventing travelers from entering the United States.[12]

With plaintiff having failed to show irreparable harm or that the public interest weighs in favor of an injunction, I need not proceed to the likelihood of success on the merits for his claims under the Supremacy Clause. See, e.g., Pisarri v. Town Sports Int'l, LLC, 758 F. App'x 188, 191 (2d Cir. 2019). That is a complicated question, better left for the impending motion to dismiss. At this stage, I conclude only that the alleged violation of the Supremacy Clause is not a proper basis for granting a preliminary injunction.

## IV.     The Remaining Claims

Unlike the Supremacy Clause claims, the remaining claims involve violations of constitutional rights. Although the Second Circuit has stated that "the *alleged* violation of a constitutional right . . . triggers a finding of irreparable harm," Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir. 1996), "the favorable presumption of irreparable harm arises only *after* a plaintiff has shown a likelihood of success on the merits of the constitutional claim," Page v. Cuomo, No. 1:20-cv-732, 2020 WL 4589329, at *6 (N.D.N.Y. Aug. 11, 2020) (citing Jolly, 76 F.3d at 482). "Thus, when a plaintiff seeks injunctive relief based on an alleged constitutional deprivation, 'the two prongs of the preliminary injunction threshold merge into one.'" Id. (quoting Turley v. Giuliani, 86 F. Supp. 2d 291, 295 (S.D.N.Y. 2000)). I will therefore proceed to the merits of each claim.[13]

---

[12] Even if a single officer exceeded his authority and attempted to bar plaintiff from entering the country, that isolated act is not a proper basis for equitable relief. See generally City of Los Angeles v. Lyons, 461 U.S. 95, 105–06 (1983).

[13] As in other cases challenging the Governor's COVID restrictions, the Governor argues that an alleged constitutional violation is irreparable harm only when a case involves the First Amendment and "related rights." See, e.g., Page, 2020 WL 4589329, at *6 (addressing this argument). That is too broad a statement. See Jolly, 76

## A.       The Constitutional Right to Interstate Travel

In moving for a preliminary injunction, plaintiff claims a violation of "the privileges and immunities for the right to travel interstate."  He argues that the Fourteenth Amendment confers a "right to entry upon clearance by Customs."  I understand plaintiff to be arguing that the requirement to complete the Traveler Health Form infringes upon his right to travel under the Privileges or Immunities Clause of the Fourteenth Amendment.

As the Supreme Court has explained, the "right to travel" is something of a constellation of rights:

> The "right to travel" discussed in our cases embraces at least three different components.  It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State.

Saenz v. Roe, 526 U.S. 489, 500 (1999).  These rights stem from different parts of the Constitution.  Although plaintiff points to the Privileges or Immunities Clause, "this clause protects the third component of the right to travel," id. at 503, that is, a citizen's "right to go to and reside in any State he chooses, and to claim citizenship therein, and an equality of rights with every other citizen," id. at 504 (quoting Slaughter-House Cases, 83 U.S. 36, 112–13 (1872) (Bradley, J., dissenting)).  That right is not at issue – the Executive Order treats New Yorkers and non-New Yorkers alike.  The case, instead, concerns the first component, "the right of a citizen of one State to enter and to leave another State."  Id. at 500.

Although the "textual source of the constitutional right to travel . . . has proved elusive," it "has long been recognized as a basic right under the Constitution."  Dunn v. Blumstein, 405

---

F.3d at 482 (suggesting that an alleged violation of the Eighth Amendment constitutes irreparable harm); Page, 2020 WL 4589329, at *6 (citing Jolly in rejecting this argument).

U.S. 330, 338 (1972) (quotation omitted) (collecting cases). The Supreme Court has thus struck down laws that outright prohibit interstate travel. See, e.g., Edwards v. California, 314 U.S. 160, 177 (1941) (California statute that prevented the transportation of any indigent person into the state). Accordingly, when a law implicates the constitutional right to travel between states, the Second Circuit applies strict scrutiny, requiring the government to show that the law is "narrowly tailored to serve a compelling government interest." Town of Southold v. Town of E. Hampton, 477 F.3d 38, 53 (2d Cir. 2007). But a law implicates that right only "when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right." Id. (quoting Attorney Gen. of New York v. Soto-Lopez, 476 U.S. 898, 903 (1986)). If a law does not fall into any of these categories, it need only survive rational basis review. Id.

Under this framework, plaintiff cannot show a likelihood of success on the merits. For starters, he cannot show that the Executive Order implicates this right in the first place. First, the Order does not deter travel – in fact, it has not even deterred plaintiff from traveling. Plaintiff knew he might have to complete the form if this suit proved unsuccessful, yet he still decided to book a flight landing at JFK, as opposed to one landing at Newark Liberty International Airport in his home state of New Jersey. Plaintiff has not presented any evidence that any other individuals have been deterred from traveling between New York and other states, nor is that a fair inference from the Executive Order itself. The Governor has simply mandated that certain travelers must disclose certain information upon entering New York. With such a minimal burden, I cannot infer that the Executive Order would deter other individuals from traveling.

Second, plaintiff has presented absolutely no evidence that the "primary objective" of the Executive Order is to deter travel. Id. And third, plaintiff cannot show that the Executive Order

"uses any classification which serves to penalize the exercise of that right." Id. The only relevant classification is that the Executive Order distinguishes between "travelers entering the United States from any country with a CDC Level 2 or Level 3" and those entering the United States from other countries. That classification does not burden interstate travel. If a citizen of New York and a citizen of New Jersey both arrived at JFK on the same flight from a Level 2 country, both would have to fill out the Traveler Health Form, even though only one would cross a state line in returning home.

Because plaintiff cannot show that the requirement to fill out the Traveler Health Form implicates the constitutional right to interstate travel, the Executive Order is subject to rational basis review. It plainly passes. By requiring incoming travelers to fill out the form, the State gains information that allows it to perform contact tracing and to enforce its quarantine requirements. Therefore, plaintiff cannot establish irreparable harm or a likelihood of success on the merits for this claim.

**B.      The Freedom of International Travel**

In his motion for a preliminary injunction, plaintiff argues that the Executive Order infringes upon his freedom to travel internationally. This argument echoes an allegation in the complaint, where plaintiff maintains that the Governor has deprived him of "the right of entry into the United States."

Once again, plaintiff cannot show irreparable harm. His argument rests on the unproven assumption that New York officials will not let him enter the United States. Moreover, plaintiff cannot rely on an alleged violation of a constitutional right, since there is no constitutional right to international travel in the first place. As he recognizes, the Supreme Court "has made it plain

that the *freedom* to travel outside the United States must be distinguished from the *right* to travel within the United States." Haig v. Agee, 453 U.S. 280, 306 (1981).

Even if deprivation of that freedom could, in theory, constitute irreparable harm, plaintiff cannot show a likelihood of success on the merits. Cf. Page, 2020 WL 4589329, at *6. The freedom to travel outside the United States "has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment." Agee, 453 U.S. at 307 (quoting Califano v. Aznavorian, 439 U.S. 170, 176 (1978)). Accordingly, many cases addressing this freedom concern procedural due process. See, e.g., id. at 309 (holding that the federal government need not hold a hearing before revoking certain individuals' passports). Plaintiff has not brought a procedural due process challenge; he instead argues that the infringement on the freedom to travel is itself unconstitutional. Although the Supreme Court does not seem to have set forth a definitive standard for such a challenge, it has clarified that a law "which is said to infringe the freedom to travel abroad is not to be judged by the same standard applied to laws that penalize the right of interstate travel." Aznavorian, 439 U.S. at 176–77. Accordingly, this freedom "can be regulated within the bounds of due process." Id. at 176. The Second Circuit has added that this freedom is not a fundamental right that would support a substantive due process claim or trigger strict scrutiny. See Jobe v. Whitaker, 758 F. App'x 144, 148 (2d Cir. 2018) (citing Weinstein v. Albright, 261 F.3d 127, 140 (2d Cir. 2001)). Under this framework, I am not convinced that the requirement to complete the Traveler Health Form amounts to an unconstitutional infringement of this freedom. The Executive Order imposes a minimal burden and is rationally related to the State's legitimate goal of safeguarding public health. That would seem to be enough to withstand constitutional scrutiny.

Finally, plaintiff suggests that the freedom to travel outside the United States brings with it a freedom to reenter the United States after being screened by Customs and Border Protection. This is a restated Supremacy Clause claim. I thus conclude that plaintiff cannot show irreparable harm or a likelihood of success on the merits when it comes to the alleged infringement on his freedom to travel outside the United States.

**C.      The Right to Informational Privacy**

In the complaint, plaintiff alleges that Executive Order 205.1 "coerc[es] disclosure of extra-information." He thus seeks a preliminary injunction on the basis that filling out the Traveler Health Form will force the "disclosure of personal information." I interpret his argument as alleging a violation of the right to informational privacy.

The Supreme Court has opined that "[t]he cases sometimes characterized as protecting 'privacy' have in fact involved . . . the individual interest in avoiding disclosure of personal matters," Whalen v. Roe, 429 U.S. 589, 598–99 (1977) (footnotes omitted), though the Court has only "assume[d], without deciding, that the Constitution protects a privacy right of th[is] sort," NASA v. Nelson, 562 U.S. 134, 138 (2011).[14] "To establish a violation of the constitutional right to [informational] privacy, a plaintiff must first show that she had a privacy interest – that is, a 'reasonable expectation of privacy' – in the information that was disclosed." Rutherford v. Katonah-Lewisboro Sch. Dist., 670 F. Supp. 2d 230, 239 (S.D.N.Y. 2009) (quoting Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 457 (1977)). Courts have borrowed this language from the Fourth Amendment context, where showing a "reasonable expectation of privacy" is a "twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and,

---

[14] One cannot help but wonder how plaintiff could show a likelihood of success on the merits when the Supreme Court has declined to recognize the constitutional right at the heart of this claim. Cf. Dillard v. O'Kelley, 961 F.3d 1048, 1055 (8th Cir. 2020) (en banc) (concluding that if the right to informational privacy "does not clearly exist, it cannot be clearly established" for purposes of qualified immunity).

second, that the expectation be one that society is prepared to recognize as reasonable."
Associated Press v. U.S. Dep't of Def., 410 F. Supp. 2d 147, 154 (S.D.N.Y. 2006) (quotation omitted).  "When a plaintiff alleges that executive action infringed upon a protected privacy right, the plaintiff must show not just that the action was literally arbitrary, but that it shocks the conscience."  Rutherford, 670 F. Supp. 2d at 240 (*colatus*).

Under this framework, plaintiff cannot show a likelihood of success on the merits, for he cannot show that he had a reasonable expectation of privacy in any of the information that he disclosed on the Traveler Health Form.  First, the form asked him to disclose if he had traveled to a country designated as CDC level 2 (moderate risk) or CDC level 3 (high-risk) and, if so, to state the country, the duration of his stay, and his destination in New York State.  Even if plaintiff had a subjective expectation of privacy in this information, it is not one society is prepared to recognize as reasonable.  Time and again, the Supreme Court has stated that "the expectation of privacy is less at the border than it is in the interior."  United States v. Flores-Montano, 541 U.S. 149, 154 (2004).

This expectation remains especially diminished at an airport.  "The general search that all of us must undergo at airports attests to the difficulties of ensuring airborne security through individualized suspicion.  Our new world has brought inconvenience and intrusions on an indiscriminate basis, which none of us welcome, but which most of us undergo in the interest of assuring a larger common good."  United States v. Kolsuz, 890 F.3d 133, 152 (4th Cir. 2018) (Wilkinson, J., concurring in the judgment); cf. In re Application of the United States for an Order Authorizing the Release of Historical Cell-Site Info., 809 F. Supp. 2d 113, 116 (E.D.N.Y. 2011) ("[C]ourts have concluded that individuals have no reasonable expectation of privacy over their location for all travels in public spaces.").  Therefore, in these circumstances, an

international traveler arriving at an airport can hardly be said to have a reasonable expectation of privacy in the country of arrival, the duration of his stay, and his destination in New York State.

Nor can plaintiff claim a reasonable expectation of privacy in the medical information he must disclose. Specifically, the Traveler Health Form requires him to state whether he has taken a COVID test and whether he has experienced any COVID symptoms in the last 72 hours. As a general matter, it is true that "[m]edical information . . . is information of the most intimate kind," in which individuals often have a reasonable expectation of privacy. O'Connor v. Pierson, 426 F.3d 187, 201 (2d Cir. 2005). But it is also true that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." Smith v. Maryland, 442 U.S. 735, 743-44 (1979). Plaintiff acknowledges that customs officials asked him if he had recently experienced any COVID symptoms, and many airlines now require passengers to disclose this same information before they board the plane.[15] These measures reflect the lessened expectation of privacy that exists when traveling during this pandemic. Therefore, I cannot conclude that plaintiff has a reasonable expectation of privacy in any of the information at issue. That means plaintiff cannot show a likelihood of success on the merits or irreparable harm when it comes to the alleged violation of his right to informational privacy.

### D. Substantive Due Process

Finally, plaintiff asserts several claims under the umbrella of substantive due process. I have already addressed several of these claims – namely, the alleged infringements on the right

---

[15] See Our Commitment to Flying Safely Together, DELTA AIRLINES (last accessed Jan. 10, 2021), https://www.delta.com/us/en/travel-update-center/ways-we-are-keeping-you-safe/safety-commitment ("Customers diagnosed with COVID-19 or experiencing symptoms of COVID-19 will not be permitted to fly."); Travel Updates, AM. AIRLINES (updated Dec. 15, 2020) ("When you check-in you'll be asked to confirm you've been free of COVID-19 symptoms for the past 14 days."); United Airlines Asks All Passengers to Take Health Self-Assessment as Part of Check-In Process, UNITED AIRLINES (updated June 11, 2020) ("Based on recommendations from the Cleveland Clinic, the 'Ready-to-Fly' checklist asks customers to confirm they have not experienced COVID-19-related symptoms in the 14 days prior to flying.").

to interstate travel, the freedom of international travel, and the right to informational privacy.  To the extent plaintiff could claim that these rights are "fundamental rights," plaintiff cannot show that the Executive Order deprived him of those rights, for the reasons set forth above.  That leaves two alleged denials of plaintiff's substantive due process rights.

First, plaintiff points to his temporary detention, noting that state officials would not let him leave unless he completed the Traveler Health Form.  "As an initial matter, a substantive due process analysis is not available where a more specific constitutional standard is directly applicable."  Jackson ex rel. Jackson v. Suffolk Cty., 87 F. Supp. 3d 386, 399 (E.D.N.Y. 2015) (quotation omitted).  And "[b]ecause the Fourth Amendment provides the source for a claim under Section 1983 premised upon an allegedly false arrest, false imprisonment, or malicious prosecution, [a plaintiff] cannot state a substantive due process claim . . . based on such conduct."  Id. (collecting cases).[16]

Instead, "the touchstone of due process is protection of the individual against arbitrary action of government."  Cty. of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998) (*colatus*).  For substantive due process, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense," which means "the cognizable level of executive abuse of power [i]s that which shocks the conscience."  Id. at 846.  Requiring international travelers to stop at the airport and disclose certain health and travel information in the middle of a pandemic should not shock anyone's conscience.  Therefore, plaintiff cannot show that the requirement to complete the Traveler Health Form amounted to a denial of substantive due process.

---

[16] Even if plaintiff had correctly labeled this claim as a Fourth Amendment one, he could not show that he is entitled to a preliminary injunction.  "Speculative, remote or future injury" is not enough to show irreparable harm.  Phelan v. Sullivan, No. 5:10-cv-0724, 2011 WL 2118696, at *3 (N.D.N.Y. May 24, 2011) (citing Lyons, 461 U.S. at 111–12).  Plaintiff's claim that he will suffer another detention is just that.  He has not demonstrated that New York officials have the legal authority to detain him if he refuses to complete the Traveler Health Form.  And even if one official attempted to detain him last time, plaintiff has not shown that this action is likely to recur.

For the second substantive due process violation, plaintiff alleges that the Governor "uses the New York State Traveler Health Form as [a] means to fabricate evidence."  He further contends that the Governor has "frame[d]" him and denied him entry "under a false pretense."  But plaintiff has offered no evidence to substantiate these claims.

Finally, I note that the Governor has invoked Jacobson v. Massachusetts, 197 U.S. 11 (1905), in defense of the challenged Executive Order.  "Under Jacobson, the state may curtail constitutional rights in response to a society-threatening epidemic so long as the measures have at least some 'real or substantial relation' to the public health crisis and are not 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'"  Columbus Ale House, 2020 WL 6118822, at *3 (quoting Jacobson, 197 U.S. at 38); see also In re Rutledge, 956 F.3d 1018, 1028 (8th Cir. 2020).

I do not understand plaintiff to have challenged the Executive Order on this ground. Perhaps sensing that similar challenges have failed, plaintiff has taken a different path, asserting the more obscure constitutional rights described above.  Admittedly, plaintiff's filings are less than clear, and to the extent his claims could be construed as falling under Jacobson, I would conclude that Executive Order 205.1 passes muster for the same reasons I explained in Columbus Ale House, Inc. v. Cuomo, No. 20-cv-4291, 2020 WL 6118822, at *3-4 (E.D.N.Y. Oct. 16, 2020).  Therefore, plaintiff cannot establish irreparable harm or a likelihood of success on the merits for his substantive due process claims.

## CONCLUSION

Plaintiff's motion for a preliminary injunction [12] is denied.

**SO ORDERED.**

_____
U.S.D.J.

Dated:  Brooklyn, New York
        January 11, 2021