UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

YOEL WEISSHAUS,

                *Plaintiff,*

     - against -

ANDREW M. CUOMO, in his official and
Individual capacities,

                *Defendant.*

20-CV-05826 (BMC)(KNF)


**DEFENDANT ANDREW M. CUOMO'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO DISMISS**


LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant*
*Andrew M. Cuomo*
28 Liberty Street
New York, NY 10005
Tel: (212) 416-8661


TODD A. SPIEGELMAN
Assistant Attorney General
    *Of Counsel*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND AND PROCEDURAL HISTORY ............................................... 2

   A. The COVID-19 Pandemic ................................................................................ 2

   B. The Executive Orders and the Traveler Health Form ..................................... 3

   C. Plaintiff's Allegations .................................................................................... 5

   D. The Court Denies Plaintiff's Preliminary Injunction Motion ........................ 6

LEGAL STANDARDS ........................................................................................... 8

ARGUMENT .......................................................................................................... 9

I.     PLAINTIFF LACKS STANDING TO SUE FOR INJUNCTIVE RELIEF ........................ 9

II.    ALL OF PLAINTIFF'S CLAIMS ARE DEVOID OF MERIT ......................................... 10

      A.   Plaintiff Fails to Plausibly Allege a Violation of the Supremacy Clause .............. 10

        1.   Plaintiff Does Not Allege the Violation of a Federal Right ................................ 10

        2.   Federal Law Does Not Preempt the Traveler Health Form Requirement .......... 13

      B.   Plaintiff Fails to Allege a Violation of His Right to Interstate Travel ................... 17

      C.   Plaintiff Fails to Allege an Infringement of His Right to International Travel ...... 18

      D.   Plaintiff Fails to State a Claim for Violation of Informational Privacy ................ 19

      E.   Plaintiff Has No Substantive Due Process Claim ................................................ 21

      F.   Plaintiff's Damages Claims Against Governor Cuomo Are Unavailing ............... 22

III.  PLAINTIFF CANNOT PLAUSIBLY ALLEGE ANY INFRINGEMENT OF HIS CONSTITUTIONAL RIGHTS BECAUSE THE EXECUTIVE ORDER IS CONSTITUTIONAL UNDER THE STANDARD APPLICABLE TO GOVERNMENT ACTION TO COMBAT EPIDEMICS ............................................................................. 24

CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Agudath Israel of Am. v. Cuomo*,
  983 F.3d 620 (2d Cir. 2020) ................................................................. 21

*Altria Group, Inc. v. Good*,
  555 U.S. 70 (2008) ............................................................................... 13

*Am. Mfs. Mut. Ins. Co. v. Sullivan*,
  526 U.S. 40 (1999) ............................................................................... 22

*Anderson v. Creighton*,
  483 U.S. 635 (1987) ............................................................................. 23

*Arizona v. U.S.*,
  567 U.S. 387 (2012) ....................................................................... 14-15

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015) ....................................................................... 11-12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................... 8, 22

*Bayley's Campground Inc. v. Mills*,
  463 F. Supp. 3d 22 (D. Maine 2020) ................................................... 23

*Blessing v. Freestone*,
  520 U.S. 329 (1997) ............................................................................. 11

*Califano v. Aznavorian*,
  439 U.S. 170 (1978) ............................................................................. 19

*Carmichael v. Ige*,
  470 F. Supp. 3d 1133 (D. Haw. 2020) ...................................... 18, 23, 25

*Carpenter v. United States*,
  138 S. Ct. 2206 (2018) ......................................................................... 20

*Charles v. Orange Cty.*,
  925 F.3d 73 (2d Cir. 2019) ................................................................... 22

*City of El Cenizo, Texas v. Texas*,
  890 F.3d 164 (5th Cir. 2018) ............................................................... 14

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ............................................................................... 16

*De Canas v. Bica*,
    424 U.S. 351 (1976) .................................................................................14

*DiBlasio v. Novello*,
    413 F. App'x. 352 (2d Cir. 2011) ..........................................................23

*English v. Gen. Elec. Co.*,
    496 U.S. 72 (1990) ...................................................................................14

*Ex Parte Young*,
    209 U.S. 123 (1908) .................................................................................11

*Figueroa v. Foster*,
    864 F.3d 222 (2d Cir. 2017) ....................................................................14

*Fowler v. Paul*,
    No. 20 Civ 3042, 2020 WL 5258458 (W.D. Ark. Sept. 3, 2020) ...........25

*Geller v. Cuomo*,
    No. 20 Civ. 4653 (ER), 2020 WL 4463207 .............................................2

*Geller v. De Blasio*,
    No. 20 Civ. 3566 (DLC), 2020 WL 2520711 (S.D.N.Y. May 18, 2020) ...............2

*Giraldo v. Kessler*,
    694 F.3d 161 (2d Cir. 2012) ......................................................................2

*Golden State Transit Corp. v. City of Los Angeles*,
    493 U.S. 103 (1989) .................................................................................11

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002) .................................................................................12

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
    425 F.3d 158 (2d Cir. 2005) ....................................................................19

*Haig v. Agee*,
    453 U.S. 280 (1981) .................................................................................19

*Henderson v. Mayor of City of N.Y.*,
    92 U.S. 259 (1875) .............................................................................16-17

*Hunter v. Bryant*,
    502 U.S. 224 (1991) .................................................................................23

*In re Abbott*,
    954 F.3d 772 (5th Cir. 2020) ...................................................................24

*Jacobson v. Massachusetts,*
   197 U.S. 11 (1905) ........................................................................................2, 24

*Jobe v. Whitaker,*
   758 F. App'x 144 (2d Cir. 2018) ...........................................................19

*Kansas v. Garcia,*
   140 S. Ct. 791 (2020) ...........................................................................16

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ...............................................................................9

*Maher v. Gagne,*
   448 U.S. 122 (1989) .............................................................................11

*Makarova v. United States,*
   201 F.3d 110 (2d Cir. 2000) ..................................................................8

*Malik v. Meissner,*
   82 F.3d 560 (2d Cir. 1996) ....................................................................8

*McKenna v. Wright,*
   386 F.3d 432 (2d Cir. 2004) ................................................................23

*Medtronic, Inc. v. Lohr,*
   518 U.S. 470 (1996) .............................................................................13

*N.Y.S. Rest. Ass'n v. N.Y.C. Bd. of Health,*
   556 F.3d 114 (2d Cir. 2009) ................................................................13

*NASA v. Nelson,*
   562 U.S. 134 (2011) .............................................................................20

*Pani v. Empire Blue Cross Blue Shield,*
   152 F.3d 67 (2d Cir. 1998) ....................................................................8

*Phillips v. City of N.Y.,*
   775 F.3d 538 (2d Cir. 2015) ................................................................25

*Roman Catholic Diocese of Brooklyn v. Cuomo,*
   141 S. Ct. 63 (2020) ............................................................................24

*Rutherford v. Katonah-Lewisboro Sch. Dist.,*
   670 F. Supp. 2d 230 (S.D.N.Y. 2009) ..........................................20-21

*Saenz v. Roe,*
   526 U.S. 489 (1999) .............................................................................17

*Safe Streets All. v. Hickenlooper*,
859 F.3d 865 (10th Cir. 2017) .............................................11

*Smith v. Maryland*,
442 U.S. 735 (1979) ...........................................................20

*Spokeo, Inc. v. Robins*,
136 S.Ct. 1540 (2016) ........................................................ 8-9

*Torraco v. Port Auth. of New York & New Jersey*,
615 F.3d 129 (2d Cir. 2010) ...............................................19

*Town of Southold v. Town of E. Hampton*,
477 F.3d 38 (2d Cir. 2007) .............................................17, 19

*U.S. v. Atl. Research, Corp.*,
551 U.S. 128 (2007) ...........................................................15

*United States v. Flores-Montano*,
541 U.S. 149 (2004) .............................................................7

*Virginia Office for Prot. & Advocacy v. Stewart*,
563 U.S. 247 (2011) ...........................................................11

*Wang v. Pataki*,
396 F. Supp. 2d 446 (S.D.N.Y. 2005) ..................................8

*Ying Jing Gan v. City of N.Y.*,
996 F.2d 522 (2d Cir. 1993) ...............................................22

## CONSTITUTIONS

First Amendment ......................................................................24

Eleventh Amendment...............................................................22

Article III ..................................................................................9

Due Process Clause.............................................................6, 19

Free Exercise Clause...............................................................24

Privileges and Immunities Clause.............................................6

Supremacy Clause............................................................ passim

**FEDERAL STATUTES**

6 U.S.C.
    § 111(b)(1) ..................................................................................14
    § 112(c)(2) ..................................................................................12
    § 211 ..................................................................................... passim
    § 211(c)(2) ..................................................................................15
    § 211(c)(5) ..................................................................................15
    § 211(c)(9) ..................................................................................15
    § 211(e)(3)(B) .............................................................................15
    § 361(a) ......................................................................................12

42 U.S.C.
    § 1983 ......................................................................... 6, 10-11, 22

Endangered Species Act .......................................................................9

Homeland Security Act of 2002, Pub.L. 107–296, Title IV
    § 411, Nov. 25, 2002, 116 Stat. 2178 ......................................12

**STATE STATUTES**

N.Y. Executive Law 29-1 ....................................................................23

**EXECUTIVE ORDERS**

EO 205 ...........................................................................................3-4, 18

EO 205.1 ........................................................................................ passim

EO 205.2 ..............................................................................................1

**RULES**

Fed. R. Evid. 201(b) ..............................................................................3

Fed. R. Civ. P. 12(b)(1) .......................................................................1, 8

Fed. R. Civ. P. 12(b)(6) .......................................................................1, 8

Defendant Andrew M. Cuomo, sued in his personal capacity and in his official capacity as Governor of the State of New York, respectfully submits this memorandum of law in support of his motion to dismiss Plaintiff Yoel Weisshaus's Complaint (ECF No. 1, "Compl."), pursuant to Rule 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

In this action, Plaintiff seeks to disrupt New York's ongoing response to the COVID-19 pandemic—the greatest public health crisis of the 21st Century—all to avoid a brief stop at the airport to complete a two-page health form questionnaire. In his Complaint, Plaintiff requests that the Court enjoin the enforcement of Executive Order 205.1 ("Executive Order" or "EO 205.1"), which requires travelers entering New York from countries where COVID-19 is prevalent to quarantine for 14 days and to complete a two-page travelers health form ("Traveler Health Form").[1] The New York State Department of Health ("DOH") utilizes the information gathered from this form to determine which travelers must quarantine and to ensure that they do so. As this Court recognized in denying Plaintiff's preliminary injunction motion, granting the relief Plaintiff seeks would weaken the State's response to the COVID-19 pandemic and, inevitably, result in a greater spread of this highly contagious, and deadly, novel coronavirus.

The Complaint is deficient for three reasons, any one of which independently justifies dismissal. First, Plaintiff lacks standing to sue for injunctive relief because he has no present, concrete plans to travel abroad and then take a return flight landing at a New York airport. Because Plaintiff does not allege that he will be required to complete the Traveler Health Form

---

[1] The Complaint erroneously purports to challenge EO 205.2, Compl. Ex. C, which allows travelers to "test out" of the 14-day quarantine period with two negative COVID-19 test results. But it is EO 205.1, setting forth the Traveler Health Form requirement for international travelers, which is actually at issue here. *See* ECF No. 16-5 (EO 205.1).

upon arrival at a New York airport after some future, undefined overseas trip, his claimed "injury" is not imminent, and thus he is not entitled to an injunction. Second, Plaintiff does not have a viable case in any event: His claims under the Supremacy Clause fail because (1) he does not allege a violation of a federal right, and (2) the role of U.S. Customs and Border Protection ("CBP") in screening passengers for ties to terrorism and other international criminal activity does not conflict with New York's role in gathering traveler information to combat a deadly pandemic. Third, Plaintiff's remaining claims alleging violations of his right to travel, informational privacy rights, and substantive due process rights are devoid of merit for the reasons this Court set forth in its denial of a preliminary injunction. Lastly, Plaintiff's claims should also be dismissed under *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), because the Traveler Health Form requirement bears a very real relation to combatting the COVID-19 pandemic, and it does not infringe on any of Plaintiff's constitutional rights.

In short, the Complaint is baseless and should be dismissed with prejudice.

## BACKGROUND AND PROCEDURAL HISTORY

### A.      The COVID-19 Pandemic

This case arises in the context of the global COVID-19 pandemic, which as of yet has "no known cure" and has "claimed over 38,000 lives" in New York State alone. ECF No. 19, Memorandum, Decision and Order denying Plaintiff's motion for a preliminary injunction ("PI Decision") at 6-7. Although vaccines for the virus are now available, only about 1.8 million out of 19 million New Yorkers have received the first dose.[2] Alarmingly, a new variant that "seem[s]

---

[2] CDC COVID Data Tracker, CTRS. FOR DISEASE CONTROL & PREVENTION (updated January 31, 2021), https://covid.cdc.gov/covid-data-tracker/#vaccinations. On a motion to dismiss, the court may take judicial notice of "relevant matters of public record," *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012), such as public health statistics reported by governmental agencies and guidance from public health organizations. *See Geller v. De Blasio*, No. 20 Civ. 3566 (DLC), 2020 WL 2520711, at *2 n.1 (S.D.N.Y. May 18, 2020) (taking judicial notice of public health statistics reported by New York City); *Geller v. Cuomo*, No. 20 Civ. 4653 (ER), 2020 WL 4463207, at *1 n.1,

to spread more easily and quickly than other variants" has been detected in "numerous countries around the world, including the United States."[3] As more people become infected, the strain on New York's health care resources increases, and there is a real risk that New York's health care system will again become overwhelmed by a flood of new COVID-19 cases.[4]

The coronavirus disease spreads through airborne transmission, which can occur when a person is in close contact with an infected person who has respiratory symptoms (*e.g.*, coughing or sneezing) or who is talking.[5] As this Court recognized, air travel in particular poses a risk of transmission because it "requires spending time in security lines, and airport terminals, which can bring you in close contact with other people and frequently touched surfaces."[6] To combat the spread of the disease, it is essential that individuals who could have been exposed to the virus, such as airline passengers, comply with quarantine requirements.[7]

### B. The Executive Orders and the Traveler Health Form

In June 2020, the Governor issued EO 205, which authorized the Commissioner of DOH to issue a travel advisory at all major points of entry, including New York airports, requiring travelers entering New York from states where COVID-19 was prevalent to "quarantine for a

n.2 (S.D.N.Y. Aug. 3, 2020) (taking judicial notice of guidance from the U.S. Centers for Disease Control and Prevention ("CDC"), an article from John Hopkins University regarding COVID-19, and guidance from the World Health Organization); *see also* Fed. R. Evid. 201(b) (permitting judicial notice of facts "not subject to reasonable dispute").

[3] New Covid-19 Variants, CTRS. FOR DISEASE CONTROL & PREVENTION (updated January 15, 2021), https://www.cdc.gov/coronavirus/2019-ncov/transmission/variant.html.

[4] COVID-19 Updates, NEW YORK STATE, https://www.governor.ny.gov/news/governor-cuomo-announces-new-record-high-number-covid-19-tests-reported-2 (January 9, 2021) (NYC hospitals at 75% ICU bed capacity).

[5] Transmission of SARS-CoV-2: Implications for Infection Prevention Precautions, WORLD HEALTH ORGANIZATION Scientific Brief, https://www.who.int/news-room/commentaries/detail/transmission-of-sars-cov-2-implications-for-infection-prevention-precautions.

[6] PI Decision at 6-7 (quoting Testing and International Air Travel, CTRS. FOR DISEASE CONTROL & PREVENTION (updated Jan. 8, 2021), https://www.cdc.gov/coronavirus/2019-ncov/travelers/testing-air-travel.html).

[7] Interim Guidance on Developing a COVID-19 Case Investigation & Contact Tracing Plan, CTRS. FOR DISEASE CONTROL & PREVENTION (last update Jan. 4, 2021), https://www.cdc.gov/coronavirus/2019-ncov/php/contact-tracing/contact-tracing-plan/overview.html.

period of 14 days." EO 205, ECF No. 16-1.

Soon after the Governor's issuance of EO 205, the DOH Commissioner issued an Order for Summary Action, which states that "all travelers subject to Executive Order No. 205 shall complete the New York State Traveler Health Form . . . and submit the complete form to the New York officials stationed at the airport, or in a receptacle designated for such forms." DOH Order, ECF No. 16-3. The DOH provides further information: "All out-of-state travelers must complete the form upon entering New York. Travelers who leave the airport without completing the form will be subject to a $10,000 fine and may be brought to a hearing and ordered to complete a mandatory quarantine."[8] Compliance with the travel advisory is "in the best interest of public health and safety."[9]

On September 28, 2020, the Governor issued EO 205.1, which expanded EO 205 and requires the Commissioner "to add to such travel advisory that travelers entering the United States from any country with a CDC Level 2 or Level 3 health notice shall be required [to] quarantine for a period of 14 days consistent with [DOH] regulations for quarantine, and that such travelers shall complete the Department of Health traveler health form or be subject to civil penalty pursuant to the Public Health Law and regulations of [DOH]."[10]

The Traveler Health Form notifies travelers of the quarantine requirements and requests,

---

[8] COVID-19 Travel Advisory, DOH, https://coronavirus.health.ny.gov/covid-19-travel-advisory (last visited Jan. 31, 2021).

[9] Interim Guidance for Quarantine Restrictions on Travelers Arriving in New York State Following Out of State Travel, DOH, dated November 3, 2020, https://coronavirus.health.ny.gov/system/files/documents/2020/11/interm_guidance_travel_advisory.pdf.

[10] The CDC uses a four-tiered system to alert Americans about COVID-19 risk in other countries. A country is designated as "Level 2" if there is a "moderate level of COVID-19" in the population, and as "Level 3" How CDC determines the Level for COVID-19 Travel Health Notices, CTRS. FOR DISEASE CONTROL & PREVENTION if there is a "high level of COVID-19." The CDC bases these designations on the number of new cases in the population per capita over the last month and whether that figure is increasing, decreasing, or remaining stable. (last update Nov. 21, 2020),https://www.cdc.gov/coronavirus/2019-ncov/travelers/how-level-is-determined.html

*inter alia*, (1) their contact information, (2) whether they traveled to a CDC level 2 or level 3 country, (3) whether they have been tested for COVID-19 within 72 hours of arrival in New York, and (4) whether they have COVID-19 symptoms. Compl., Ex. B. The form is utilized to determine which travelers must quarantine and to enable DOH to contact these travelers to ensure compliance with quarantine requirements and to engage in contact tracing, if necessary. *See id.*

### C. Plaintiff's Allegations

Plaintiff, a New Jersey resident, alleges that he arrived at JFK airport on November 18, 2020, after traveling overseas. Compl. ¶¶ 9, 11. He alleges that CBP provided him with a pamphlet from the CDC that advised travelers that individuals may be exposed to COVID-19 while traveling, *id.* ¶ 14 & Ex. A, and then "granted [him] entry to [the] United States." *Id.* ¶ 13. Notably, Plaintiff does not claim that CBP advised him to quarantine, provided him with information about how to quarantine, or followed up with him to ensure compliance.

After Plaintiff exited the area operated by CBP, "Defendant's agent" requested that he complete the Traveler Health Form. Plaintiff objected, stating that his destination was outside New York, and was allegedly told that "you cannot leave until you complete this form." Compl. ¶¶ 16-19. He then apparently completed the form and left the airport without further incident.

Plaintiff further alleges that he would be returning from another overseas trip, through JFK Airport, on January 13, 2021. Compl. ¶ 33; ECF No. 18-1, Plaintiff's Affirmation in Support of His Motion for Preliminary Injunction ("Pl. Aff.") ¶ 13. He also purportedly "expect[s] to have other overseas trips throughout 2021," but concedes that "nothing is planned yet." Pl. Aff. ¶ 15.

Plaintiff brings this suit under 42 U.S.C. § 1983 ("Section 1983"), primarily seeking

injunctive relief. He claims that the requirement for completion of the Traveler Health Form violates the Supremacy Clause (Compl. Counts I and III), Due Process Clause (*id.* Count II), and Privileges and Immunities Clause (*id.* ¶ 2) of the United States Constitution. He asks this Court to issue a preliminary injunction: (1) entering a judgment "holding that the Executive Order is preempted by Federal law"; (2) enjoining the Governor from "imposing any conditions supplementary or complimentary to those practiced by [CBP]"; and (3) enjoining the Governor from using any information obtained from the Travelers Health Form. *Id.* ¶ 62. Plaintiff also seeks "damages," *id.* ¶ 54, but does not allege how he has been damaged monetarily.

As this Court found in its PI Decision, "Plaintiff asserts a litany of claims under these provisions, citing violations of his right to interstate travel, his freedom of international travel, his right to avoid disclosure of certain personal information, and his right to be free from an unlawful detention." PI Decision at 4. But, simply stated, the State has not violated any of Plaintiff's rights by requiring him to complete the two-page form at issue. As all of Plaintiff's claims are devoid of merit, this action should be dismissed accordingly.

### D. The Court Denies Plaintiff's Preliminary Injunction Motion

Plaintiff moved to preliminarily enjoin the Traveler Health Form requirement, and the Governor opposed the motion. The Court issued its decision on January 11, 2021, denying Plaintiff's motion because he "cannot show irreparable harm, a likelihood of success on the merits, or that the public interest weighs in favor of an injunction." PI Decision at 1.

The Court further held that Plaintiff failed to demonstrate the fundamental harm upon which he bases this action—that he would be barred from entering the country if he refused to complete the Traveler Health Form. Observing that Plaintiff "has not cited any statute, regulation, or executive order that confers that legal authority [to bar entry]," the Court

concluded that New York officials were not "preventing travelers from entering the United States." *Id.* at 10-11.

The Court also found that Plaintiff was unlikely to succeed on the merits of his interstate travel claim because "the Executive Order treats New Yorkers and non-New Yorkers alike," in that they must all complete the Traveler Health Form. *Id.* at 12. Because the Traveler Health Form requirement does not infringe on Plaintiff's right to interstate travel, it was subject to rational basis review. And, the Court found that EO 205.1 "plainly passes" such review because the Traveler Health Form is used to "perform contact tracing and to enforce [the State's] quarantine requirements," both of which serve to limit the spread of COVID-19. *Id.* at 12-14.

The Court likewise found that Plaintiff was unlikely to succeed on his claim that EO 205.1 infringed on his purported "right" to travel internationally. International travel "is not a fundamental right that would support a substantive due process claim or trigger strict scrutiny." *Id.* at 15. The Court held that the Executive Order "withstand[s] constitutional scrutiny" because it "imposes only a minimal burden" on international travel that is "rationally related to the State's legitimate goal of safeguarding public health." *Id.*

With respect to Plaintiff's claim of informational privacy, the Court found that Plaintiff did not have an expectation of privacy in the information he disclosed on the Traveler Health Form because he had already disclosed much of it to third parties, and, in any event, "the expectation of privacy is less at the border than it is in the interior," especially at airports. *Id.* at 17 (quoting *United States v. Flores-Montano*, 541 U.S. 149, 154 (2004)).

Finally, the Court held that Plaintiff was unlikely to succeed on his substantive due process claims because "[r]equiring international travelers to stop at the airport and disclose certain health and travel information in the middle of a pandemic should not shock anyone's

conscience." *Id.* at 19.

## LEGAL STANDARDS

As this Court is aware, "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff opposing a Rule 12(b)(1) motion has the burden of showing that subject matter jurisdiction exists. *Id.*; *see also Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996). The doctrine of standing is a question of subject matter jurisdiction because it is designed "to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016).

In addition, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "reviewing court [must] draw on its judicial experience and common sense" to determine plausibility. *Id.* at 677. This standard places a very real burden on the plaintiff, whose claim cannot go forward if it offers merely "labels and conclusions" or "naked assertions devoid of further factual enhancement." *Id.* at 678. It is only the well-pled facts that a court accepts as true. *Id.* On a motion to dismiss, the court may consider documents incorporated by reference in the complaint and may take judicial notice of public documents, such as statutes, case law, and executive orders. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *Wang v. Pataki*, 396 F. Supp. 2d 446, 453 n.1 (S.D.N.Y. 2005).

# ARGUMENT

## I.  PLAINTIFF LACKS STANDING TO SUE FOR INJUNCTIVE RELIEF

In order to satisfy the "irreducible constitutional minimum" of Article III standing, a plaintiff "must have suffered an 'injury in fact'" that is "fairly . . . trace[able] to the challenged action of the defendant" and is likely to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted). The plaintiff's "injury in fact" must be "(a) concrete and particularized; and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 560 (citations and quotations omitted). An injury is not imminent if it will occur "at some indefinite future time; it must be 'certainly impending.'" *Id.* at 564 n.2. At the pleading stage, the plaintiff must plausibly and "'clearly . . . allege facts demonstrating each element [of standing].'" *Spokeo, Inc.*, 136 S.Ct. at 1547.

In *Lujan*, wildlife conservation groups challenged an environmental regulation that prevented certain provisions of the Endangered Species Act from being applied in foreign countries. Members of the plaintiff conservation group claimed standing because they had previously observed the habitat of endangered animals abroad and "intend[ed] to do so again," although one admitted to having no current travel plans. *Id.* at 563-64. The Supreme Court found that they lacked standing for two reasons: First, it found "[t]hat the women 'had visited' the areas . . . proves nothing [because] [p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* Second, it held that "an 'intent' to return . . . is simply not enough. Such 'some day' intentions—without any description of concrete plans, or indeed any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Id.*

The same is true here. Plaintiff allegedly returned from overseas trips in November 2020 and January 2021, but such past exposure to the purported "harm" of completing the form does not entitle him to a prospective injunction. And Plaintiff does not allege any concrete plans to take additional trips. While Plaintiff's affirmation—not his Complaint—avers that he "expect[s]" to take additional trips in 2021, he concedes that "nothing is planned yet." Pl. Aff. ¶ 15. As in *Lujan*, Plaintiff's "some day" intentions do not present an actual or imminent injury. Consequently, he lacks standing to seek injunctive relief.

## II.     ALL OF PLAINTIFF'S CLAIMS ARE DEVOID OF MERIT

Plaintiff claims that the Traveler Health Form requirement violates the Supremacy Clause, his right to interstate travel, his purported "right" to travel internationally, his right to informational privacy, and his substantive due process rights. Plaintiff also claims damages against the Governor in his personal and official capacities. All of Plaintiff's claims are unavailing.

### A.     Plaintiff Fails to Plausibly Allege a Violation of the Supremacy Clause

Plaintiff alleges that EO 205.1 violates the Supremacy Clause of the United States Constitution. *See* U.S. Constitution, Art. VI, cl. 2 ("This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land . . ."). Plaintiff argues that the statute establishing CBP, 6 U.S.C. § 211, "occupies the field of screening all persons entering the United States" and preempts EO 205.1. Compl. ¶ 25. Plaintiff is incorrect.

### 1.   Plaintiff Does Not Allege the Violation of a Federal Right

As an initial matter, Plaintiff's Supremacy Clause claim fails because he does not assert a violation of any federal right. To bring a viable Section 1983 claim against a state actor to enforce a federal statute, "a plaintiff must assert the violation of a federal *right*, not merely a

violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). This is the case even where a plaintiff sues for injunctive relief. The Supreme Court has held that a plaintiff's suit in equity to enforce a federal statute "*cannot occur* unless the" plaintiff "has been given a federal right of [his] own to vindicate . . . under the . . . statute at issue." *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 n.8 (2011) (emphasis added); *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 902-03 (10th Cir. 2017) ("Congress must have created a specific and uniquely federal right or remedy, enforceable in a federal court of equity" for injunctive relief to issue). But Plaintiff here cannot assert a federal right under *any* of the authorities upon which he relies.

First, Section 1983 "does not itself create substantive rights," but is only a vehicle to enforce federal rights secured elsewhere. *Maher v. Gagne*, 448 U.S. 122, 129 n.11 (1989).

Second, "'the Supremacy Clause, of its own force, does not create rights.'" PI Decision at 8 (quoting *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989) (footnote omitted)). "It instead 'creates a rule of decision: Courts shall regard the Constitution, and all laws made in Pursuance thereof, as the supreme Law of the Land.'" *Id.* (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015)).

Third, the statute establishing CBP does not create a private right of action. "[P]laintiff has not established (or even argued) that he has any rights under 6 U.S.C. § 211, nor could he. The statute does not confer an individual right to be screened only by CBP; it simply tasks the agency with screening individuals who enter the United States." PI Decision at 9. Consequently, Plaintiff's Supremacy Clause claim fails because it is not predicated upon any federal right.

Notably, even if one took a broader view of a plaintiff's ability to seek injunctive relief in federal court against state officials under *Ex Parte Young*, 209 U.S. 123 (1908), Plaintiff's case

would still fail. That is because the Homeland Security Act of 2002 ("HSA"), which established the Department of Homeland Security ("DHS"), including CBP within it, "implicitly precludes private enforcement." *Armstrong*, 575 U.S. at 327 ("The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations."); Homeland Security Act of 2002, Pub.L. 107–296, Title IV, § 411, Nov. 25, 2002, 116 Stat. 2178.

The HSA created an "Office for State and Local Government Coordination," under the Secretary of DHS, "to oversee and coordinate departmental programs for and relationships with State and local governments." 6 U.S.C. § 361(a). Among other duties, the Secretary "coordinat[es] . . . the Federal Government's communications . . . relating to homeland security with State and local government personnel, agencies, and authorities." *Id.* § 112(c)(2). Thus, the statute confers on the Secretary, who oversees CBP, the responsibility of working with state governments to protect the homeland. Even if it were within CBP's duties to gather information to combat a pandemic—and it is not, *see infra*—the HSA would leave it to the Secretary to coordinate with states to gather that information, not rely on private plaintiffs to bring lawsuits against states purportedly enforcing CBP's duties. The structure of the HSA demonstrates congressional intent to rely on the Secretary for "'the expertise, uniformity, widespread consultation, and resulting administrative guidance that can accompany agency decisionmaking' and avoid[] 'the comparative risk of inconsistent interpretations and misincentives that can arise out of occasional inappropriate application of a statute in a private action." *Armstrong*, 575 U.S. at 328-29 (quoting *Gonzaga Univ.*, 536 U.S. at 292 (Breyer J., concurring in judgment)).

It is for DHS to determine how the states may further its important mission, not individual civil litigants. Plaintiff's Supremacy Clause claim is thus unavailing, even if one takes a broad view of his ability to sue for injunctive relief in federal court.

## 2. Federal Law Does Not Preempt the Traveler Health Form Requirement

Further, even if Plaintiff could assert a federal right underlying his Supremacy Clause claim, it would fail nonetheless because he cannot show that Section 211 of Title 6 "occupies the field" so as to preempt EO 205.1. The Executive Order at issue here concerns gathering information to protect the public health, an entirely different field than Section 211, which relates to screening passengers and cargo in order to prevent and deter terrorism and other international criminal activity.

Under the Supremacy Clause, "'state laws that conflict with federal law are without effect.'" *N.Y.S. Rest. Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009) (quoting *Altria Group, Inc. v. Good,* 555 U.S. 70, 76 (2008)). But, there is a strong presumption *against* the preemption of state laws—especially those that pertain to the health and safety of state residents.

> "[W]e start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the *clear and manifest* purpose of Congress. The presumption against preemption is heightened 'where federal law is said to bar state action in fields of traditional state regulation.' Given the traditional '*primacy of state regulation of matters of health and safety*, courts assume that state and local regulation related to [those] matters . . . can *normally coexist* with federal regulations.'"

*N.Y.S. Rest. Ass'n*, 556 F.3d at 123 (internal citations omitted) (emphasis added); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996) ("States traditionally have great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons.").

"In general, three types of preemption exist: (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for

state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives." *Figueroa v. Foster*, 864 F.3d 222, 227–28 (2d Cir. 2017).

Here, Plaintiff only relies on a field preemption theory. He cites no express preemption provision. Nor does he claim that conflict preemption applies because it would be impossible to comply with both Section 211 of Title 6 and EO 205.1. To the contrary, Plaintiff allegedly cleared Customs *before* completing the Traveler Health Form, as have many thousands of other travelers.

Field preemption "may be inferred from a scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, or where an Act of Congress touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990). However, "the relevant field should be *defined narrowly*." *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 177-78 (5th Cir. 2018) (emphasis added) (citing *Arizona v. U.S.*, 567 U.S. 387, 400-01 (2012)). And "courts should hesitate to infer field preemption unless plaintiffs show 'that complete ouster of state power including state power to promulgate laws not in conflict with federal laws was 'the clear and manifest purpose of Congress.'" *Id.* at 176 (quoting *De Canas v. Bica*, 424 U.S. 351, 357 (1976), *superseded by statute on other grounds*)).

Here, CBP was established under DHS, which has the "primary mission" of, *inter alia*, "(A) prevent[ing] terrorist attacks within the United States; (B) reduc[ing] the vulnerability of the United States to terrorism; [and] (C) minimiz[ing] the damage, and assist[ing] in the recovery, from terrorist attacks that do occur within the United States." 6 U.S.C. § 111(b)(1).

This focus on protecting the United States from terrorism is also CBP's primary responsibility. Thus, it is CBP's duty to "detect, respond to, and interdict terrorists, drug smugglers and traffickers, human smugglers and traffickers, and other persons who may undermine the security of the United States." 6 U.S.C. § 211(c)(5). Similarly, CBP must "ensure the interdiction of persons and goods illegally entering . . . the United States," *id.* § 211(c)(2), and the Border Patrol within CBP "deter[s] and prevent[s] the illegal entry of terrorists, terrorist weapons, persons; and contraband." *Id.* § 211(e)(3)(B). While Section 211 also provides that CBP will implement "screening" capabilities, *id.* § 211(c)(9), it is clear from the entire statute that CBP screens travelers to determine who might engage in serious criminal conduct. *See U.S. v. Atl. Research, Corp.*, 551 U.S. 128, 135 (2007) ("Statutes must 'be read as a whole'").

EO 205.1 is, of course, entirely unrelated to defending the homeland from terrorism and other criminal conduct. Instead, the focus of the EO is on protecting the health and safety of New Yorkers by gathering basic information from travelers to ensure compliance with quarantine requirements. This completely differs from CBP's duties, as Section 211 does not even mention the word "health." In short, Plaintiff is unable to show that Section 211 and EO 205.1 regulate the same field, let alone that Section 211 completely ousts the states of their essential duty to protect the public health.

Plaintiff's remaining assertions are similarly baseless. First, New York would not have denied Plaintiff entry into the United States had he refused to complete the Traveler Health Form. EO 205.1 only authorizes "a civil penalty" in those circumstances, and does not deny admission into the country. The State is certainly cognizant that Congress "specifie[s] which aliens may be removed from the United States," *Arizona*, 567 U.S. at 396, and, as this Court noted, EO 205.1 does not direct, or even contemplate, refusal of entry or removal from the

country. PI Decision at 10. And, Plaintiff has not cited any law that would authorize the State to deny him entry. Plaintiff is left only with his claim that Defendant's agent told him he could not leave the airport until he completed the health form. But, as this Court observed, "he *did* complete the form" and left the airport without incident. *Id.*[11]

Second, the advisory guidance from the CDC (Compl. Ex. A) surely does not conflict with the State's Traveler Health Form requirement given that the CDC itself advises all travelers to "always follow state and local recommendations or requirements related to travel."[12] Moreover, the guidance is not federal law that could give rise to a conflict. As the Supreme Court recently held, "'[t]here is no federal preemption *in vacuo*,' without a constitutional text, federal statute, or treaty made under the authority of the United States." *Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020).

Third, Plaintiff's reliance on an almost 150 year-old case, *Henderson v. Mayor of City of N.Y.*, 92 U.S. 259 (1875) (Compl. ¶ 3), is entirely misplaced. In *Henderson*, ship owners challenged a New York statute requiring them to provide personal information about their passengers arriving in New York in order to obtain a $300 bond on each passenger. *Id.* at 265-67. The Court found that these requirements interfered with "the active commerce with foreign nations." *Id.* at 273. However, the statute in *Henderson* required the collection of travelers' information for economic reasons, not for health reasons. And the *Henderson* Court specifically distinguished legislation aimed at protecting the public health, stating that it was not deciding

---

[11] As the Court also noted, even if a single officer actually did attempt to bar Plaintiff from entering the country on one occasion, that would not be a proper basis to award injunctive relief because the Executive Order itself does not authorize such a penalty. PI Decision at 11 n.12 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983)). (injunctive relief against police department unwarranted where one officer allegedly failed to follow policy when he placed plaintiff in chokehold without provocation)).

[12] Testing and International Air Travel, CTRS. FOR DISEASE CONTROL & PREVENTION (updated January 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/travelers/testing-air-travel.html

whether, in the absence of federal legislation, the "States can, or how far they can, by appropriate legislation, protect themselves against . . . diseased persons, arriving in their territory from foreign countries." *Id.* at 274. Indeed, the *Henderson* Court itself recognized the State's primacy in the area of public health. *Id.* at 271 ("preservation of . . . health and comfort" is "reserved to the States").

Plaintiff's Supremacy Clause claim should be dismissed for any or all of these reasons.

**B.      Plaintiff Fails to Allege a Violation of His Right to Interstate Travel**

Plaintiff also fails to state a viable claim that the Traveler Health Form requirement violates his right to interstate travel.

This right includes three different components:

> It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State.

*Saenz v. Roe*, 526 U.S. 489, 500 (1999).

The latter two components concern out-of-state residents being treated worse than in-state residents. That plainly is not at issue here. Travelers arriving at a New York airport must complete the Traveler Health Form regardless of whether or not they reside in New York. EO 205.1; PI Decision at 12.

As to the first component, a law only infringes upon the right of a citizen of one state to enter and to leave another state "when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right." *Id.* at 13 (quoting *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 53 (2d Cir. 2007)).

As this Court correctly held, EO 205.1 "does not deter travel—in fact, it has not even

deterred Plaintiff from traveling." PI Decision at 13. To the contrary, Plaintiff apparently chose to fly into a New York airport a second time in January 2021, even though he could have booked a flight to another state that does not have a health form requirement, including his home state of New Jersey.[13] And it is clear that the primary objective of the Executive Order is to protect the public health, not to impede travel. PI Decision at 13. Lastly, EO 205.1 does not use any classification system that penalizes the right to interstate travel. *Id.* at 14.

Notably, state-mandated 14-day quarantines have been found not to burden the right to interstate travel. *See, e.g., Carmichael v. Ige*, 470 F. Supp. 3d 1133, 1145 (D. Haw. 2020); *Page*, 2020 WL 4589329, at *11-12 (dismissing "right to travel" challenge to quarantine requirement of EO 205). Plaintiff here complains only about a travel delay of a few minutes needed to complete paperwork, which hardly arises to an unconstitutional burden.

The Executive Order does not "implicate[] the constitutional right to interstate travel," and, therefore, is subject to rational basis review, which it easily passes. PI Decision at 14. By requiring travelers to complete the form, the "State gains information that allows it to perform contact tracing and to enforce its quarantine requirements." *Id.* The Executive Order is thus rationally related to the legitimate State interest of combatting the pandemic, and Plaintiff's "right to travel" claim consequently should be dismissed.

### C. Plaintiff Fails to Allege an Infringement of His Right to International Travel

Plaintiff apparently claims that EO 205.1 violates his constitutional "right" to travel internationally. Compl. ¶ 40. At the outset, the claim is unavailing because it is based on a false assumption that New York would have barred him from entry had he not completed the form. *See supra* p. 6.

---

[13] *See* <u>Out of State Traveler Registration</u>, New Jersey Covid-19 Hub https://covid19.nj.gov/forms/njtravel ("providing your personal information . . . is voluntary").

And Plaintiff's claim is meritless for other reasons. As this Court has (correctly) held, "[t]here is *no* constitutional right to international travel in the first place." PI Decision at 14 (emphasis added) (citing *Haig v. Agee*, 453 U.S. 280, 306 (1981) ("the *freedom* to travel outside the United States must be distinguished from the *right* to travel within the United States"; *see also Jobe v. Whitaker*, 758 F. App'x 144, 148 (2d Cir. 2018) (court held that the plaintiff failed to establish "a fundamental right to international travel").[14]

Moreover, the Second Circuit has repeatedly held that "'minor restrictions on travel simply do not amount to the denial of a fundamental right.'" *Torraco v. Port Auth. of New York & New Jersey*, 615 F.3d 129, 140–41 (2d Cir. 2010) (quoting *Town of Southold*, 477 F.3d at 53). Such "minor restrictions" have been found to include arresting and detaining an airline passenger for more than one day. *Id.* at 133-34, 141. Plaintiff's brief stop at the airport to complete a health form during a global pandemic is far less intrusive than an arrest and a detention.

In short, even assuming Plaintiff has a constitutional right to international travel (which he does not), that alleged right has not been burdened in any way, as a matter of law.

### D.  Plaintiff Fails to State a Claim for Violation of Informational Privacy

Plaintiff further claims that the Traveler Health Form "coerc[es] [the] disclosure of extra-information." Compl. ¶ 42. This Court inferred that Plaintiff's claim is for a violation of his right to informational privacy and rightly found that such a claim was unlikely to succeed. PI Decision at 16-18. Indeed, it fails because (1) Plaintiff does not have a reasonable expectation of privacy in any of the information disclosed, and (2) even if he did, the State's request for such

---

[14] The freedom of international travel has been considered no more than a liberty interest protected by the Due Process Clause. *Haig*, 453 U.S. at 307 (quoting *Califano v. Aznavorian*, 439 U.S. 170, 176 (1978)). But Plaintiff has not brought a procedural due process claim, and, in any event, any such claim would fail: Individuals do not have a right to notice and a hearing on laws enacted by a governmental body that are generally applicable to the public, and EO 205.1 only sets forth generally applicable requirements for the public. *See Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 174 (2d Cir. 2005) ("[o]fficial action that is legislative in nature is not subject to the notice and hearing requirements of the due process clause").

information clearly does not "shock[] the conscience." *Id.*

The Traveler Health Form requests: (1) basic information such as name, birth date, gender, phone number, and e-mail address; (2) information related to the traveler's trip including countries visited (if CDC Level 2 or Level 3), destination address in New York, arrival airport, and flight number; and (3) COVID-19 related information, including whether the traveler took a COVID-19 test in the last three days, and whether he or she has experienced any symptoms in the last 24 hours. Compl. Ex. B. Such disclosures hardly present an unconstitutional burden upon world travelers during a global pandemic.

Notably, the Supreme Court has never squarely recognized a constitutional right to informational privacy. PI Decision at 16 & n.14 (citing *NASA v. Nelson*, 562 U.S. 134, 138 (2011)). Lower courts that have recognized such a right set forth a two-pronged test for whether the government has violated it through executive action. First, a plaintiff must have a reasonable expectation of privacy in the information disclosed. Second, a plaintiff must plausibly allege "'not just that the action was literally arbitrary, but that it shocks the conscience.'" PI Decision at 16-17 (quoting *Rutherford v. Katonah-Lewisboro Sch. Dist.*, 670 F. Supp. 2d 230, 239 (S.D.N.Y. 2009)).

Plaintiff has not shown that he has any expectation of privacy in the information disclosed on the form. A person has "'no legitimate expectation of privacy in information he voluntarily turns over to third parties.'" PI Decision at 18 (quoting *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979)).[15] Here, Plaintiff had already disclosed almost all of the information requested by the form to third parties. International travelers must complete a "I-94

---

[15] The Supreme Court has carved out a narrow exception from this principle with respect to an individual's cell-phone location data. *Carpenter v. United States*, 138 S. Ct. 2206, 2219 (2018). That is not at issue here.

Arrival/Departure record" which requires basic personal information, including name, birthdate, address, e-mail, and phone number.[16] Moreover, the CDC currently requires that international travelers provide proof of a negative COVID-19 test taken within three days prior to travel or documentation of having recovered from COVID-19.[17] That overlaps with the Traveler Health Form question concerning whether the traveler took a COVID-19 test within the last three days. And many airlines ask about a travelers' COVID-19 symptoms before boarding, just as the Traveler Health Form does. PI Decision at 18 & n.15 (identifying policies of Delta Airlines, American Airlines, and United Airlines in this regard). Lastly, while the Traveler Health Form asks whether the traveler is an essential worker, that is hardly the type of highly personal information in which one could have a reasonable expectation of privacy, particularly at an airport where the expectation of privacy "remains especially diminished." PI Decision at 17.

Finally, Plaintiff has not nearly alleged *any* State action as to his personal information that could be "conscience-shocking." *Rutherford*, 670 F. Supp. 2d at 239. To the contrary, gathering health information to ensure broader compliance with quarantine requirements furthers the "compelling state interest" in "[s]temming the spread of COVID-19." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 633 (2d Cir. 2020). Consequently, Plaintiff has not plausibly alleged a violation of any purported constitutional right to informational privacy.

### E.      Plaintiff Has No Substantive Due Process Claim

Plaintiff appears to allege that his substantive due process rights have been violated by his having to complete the Traveler Health Form, the brief stop he made to complete the form,

---

[16] *See* <u>Sample I-94 Form</u>, DHS, https://www.cbp.gov/sites/default/files/documents /CBP%20Form%20I-94%20English%20SAMPLE_Watermark.pdf

[17] <u>CDC Order, dated January 12, 2021</u>, CTRS. FOR DISEASE CONTROL & PREVENTION https://www.cdc.gov/quarantine/pdf/global-airline-testing-order_2021-01-2_R3-signed-encrypted-p.pdf

and the State's purported use of the form to "fabricate evidence to deprive Plaintiff from [sic] a substantive due process." Compl. ¶ 46. None of these allegations presents a viable substantive due process claim.

To plead a substantive due process claim, a plaintiff must plausibly allege that he "has been deprived of a protected interest in 'property' or 'liberty,'" *Am. Mfs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999), and that "the government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Charles v. Orange Cty.*, 925 F.3d 73, 85 (2d Cir. 2019). Plaintiff has not asserted a property interest, and even assuming that his liberty interests were implicated by the brief stop needed to complete the health form, his substantive due process claim would still fail. As this Court has held, requiring disclosure of limited health information during a pandemic is not a conscience-shocking government action. PI Decision at 19.

Further, Plaintiff does not plausibly allege that the Governor uses the Traveler Health Form to fabricate evidence. Compl. ¶ 47. He does not even attempt to explain how or why the State would fabricate evidence. His "'unadorned, the defendant-unlawfully-harmed-me accusation'" is baseless and, in any event, does not state a viable claim. *Iqbal*, 556 U.S. at 678.

### F.     Plaintiff's Damages Claims Against Governor Cuomo Are Unavailing

Plaintiff's Section 1983 claim for damages against the Governor in his personal and official capacities (Count III) must also be dismissed. It is established beyond peradventure that where "a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993).

Plaintiff fails to state a viable Section 1983 claim against the Governor in his personal capacity because, as set forth above, he does not plausibly allege any underlying constitutional

violation. Plaintiff's damages claims also fail because of the Governor's qualified immunity. This immunity protects officials who "act in ways they reasonably believe to be lawful," *Anderson v. Creighton*, 483 U.S. 635, 641 (1987), and "gives ample room for mistaken judgment," by protecting "'all but the plainly incompetent or those who knowingly violate the law,'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). A defendant may move to dismiss on qualified immunity grounds when "the defense is based on facts appearing on the face of the complaint." *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004). Such is the case here.

It is undisputed that EO 205.1 was lawfully enacted by Governor Cuomo pursuant to his powers under, *inter alia*, Article IV, section one, of the New York State Constitution and N.Y. Executive Law 29-1. The Executive Order reasonably requires travelers to complete a health form with basic information to facilitate their compliance with quarantine requirements. It plainly does not violate any clearly established constitutional rights, as the quarantine requirement itself is constitutional. *See Bayley's Campground Inc. v. Mills,* 463 F. Supp. 3d 22, 35 (D. Maine 2020) (plaintiffs unlikely to show that 14-day quarantine period violated their constitutional rights); *Carmichael*, 470 F. Supp. 3d at 1145-47 (same); *Page*, 2020 WL 4589329, at *11 (same); *cf. DiBlasio v. Novello*, 413 F. App'x. 352 at *3 (2d Cir. 2011) (summary order) (very purpose of qualified immunity is to protect officials when their jobs require them to make difficult decisions, "such as in the context of a public health emergency").

The Governor is entitled to qualified immunity because it was objectively reasonable for him to believe EO 205.1 was legal, and because Plaintiff cannot show the violation of any clearly established federal right.

**III.   PLAINTIFF CANNOT PLAUSIBLY ALLEGE ANY INFRINGEMENT OF HIS CONSTITUTIONAL RIGHTS BECAUSE THE EXECUTIVE ORDER IS CONSTITUTIONAL UNDER THE STANDARD APPLICABLE TO GOVERNMENT ACTION TO COMBAT EPIDEMICS**

As an additional matter, the Supreme Court made clear in *Jacobson v. Commonwealth of Mass.,* that a state must be given wide latitude to enact measures to "protect itself against an epidemic of disease which threatens the safety of its members." 197 U.S. 11, 25, 27 (1905). Under *Jacobson*, the state's action must be upheld *unless* it "has no real or substantial relation to" the object of protecting the public or is "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Id.* at 27, 31.

The *Jacobson* standard applies to *all* of the claims asserted in Plaintiff's Complaint. *See In re Abbott*, 954 F.3d 772, 786 (5th Cir. 2020) ("*Jacobson* instructs that <u>all</u> constitutional rights may be reasonably restricted to combat a public health emergency"). Courts in this Circuit and around the country have repeatedly declined to enjoin state actions that have been enacted to combat the COVID-19 pandemic, based on the *Jacobson* precedent. *See, e.g.*, *id.* at 777 (applying *Jacobson* standard to executive order postponing non-essential medical procedures).[18]

Moreover, courts have applied *Jacobson* in dismissing outright plaintiffs' challenges to state actions that allegedly violated their constitutional rights. Indeed, even before the COVID-19 pandemic, the Second Circuit held that *Jacobson* "made clear" that it was up to elected officials

---

[18] To be sure, in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), the Supreme Court did not apply the *Jacobson* standard in finding that a church and synagogue were likely to succeed on claims challenging COVID-19-related occupancy restrictions in New York houses of worship. *Id.* at 66-67. But that opinion related only to claims asserted by religious groups under the First Amendment Free Exercise Clause, with the Court analyzing whether the restrictions were "neutral" and of "general applicability." *Id.* Nothing in the *Diocese* opinion disturbs *Jacobson's* applicability where non-religious rights are at issue. In fact, the concurring opinions clarify that the *Jacobson* standard still applies in most contexts. *Id.* at 74 (Kavanaugh, J., concurring) (noting that "[s]ubstantial deference" to state and local authorities is appropriate during a pandemic, especially where the issue is <u>not</u> "religious discrimination, racial discrimination, free speech, or the like"); *id.* at 70-71 (Gorsuch, J., concurring) (suggesting that courts may uphold states' "emergency restrictions" on certain rights, including substantive due process rights, though not on religious exercise). As Plaintiff in this case does not assert a free exercise claim, a claim of religious or racial discrimination, or any claim under the First Amendment, the *Jacobson* standard applies to all of his claims.

to make decisions regarding the public health, not the courts or "individual objectors." *Phillips v. City of N.Y.*, 775 F.3d 538, 542 (2d Cir. 2015). In Phillips, the Second Circuit affirmed the district court's grant of the defendants' motion to dismiss the plaintiffs' challenge to a mandatory vaccination statute because "as Jacobson made clear, that is a determination for the legislature." Id. Indeed, courts have also applied Jacobson to dismiss claims that executive actions violated a plaintiff's right to travel or their substantive due process rights. *Page*, 2020 WL 4589329, at *11 (finding Jacobson is a "complete roadblock" to a plaintiff's right to travel and substantive due process claims challenging state-ordered quarantine); *Fowler v. Paul*, No. 20 Civ. 3042, 2020 WL 5258458, at *5 (W.D. Ark. Sept. 3, 2020) (dismissing substantive due process claim against restriction on business because the plaintiffs "do not make a plausible claim that the [restriction] 'has no real or substantial relation' to protecting the public health").

As with the plaintiffs in those cases, Jacobson precludes Plaintiff's claims here. He does not—and cannot—plausibly allege that the Traveler Health Form requirement lacks a "real or substantial relation to" the objective of protecting the public from the scourge of COVID-19. Further, EO 205.1's health form requirement does not invade Plaintiff's constitutional rights, much less constitute a "plain, palpable invasion" of them (see supra pp. 17-23). Accordingly, Plaintiff's claims should also be dismissed based upon the Jacobson standard.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss should be granted in its entirety, and the Complaint should be dismissed with prejudice.

Dated: New York, New York
      February 2, 2021

LETITIA JAMES
Attorney General for the State of New York
*Attorney for Defendant*
28 Liberty Street, New York, New York 10005
By: _____/S/_____
Todd A. Spiegelman
Assistant Attorney General